**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PETER ACCURSO, | : | |
| *Plaintiff & Counterclaim Defendant,* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| INFRA-RED SERVICES, INC., et al., | : | No. 13-7509 |
| *Defendants & Counterclaim Plaintiffs.* | : | |

**M E M O R A N D U M**

PRATTER, J.                                                          MAY 28, 2014

This action arises from the termination of Peter Accurso's employment with Infra-Red Services, Inc.,[1] Roofing Dynamics Group, LLC, and Roofing Dynamics, Inc. Brian Land and Audrey Strein have moved for partial judgment on the pleadings (Docket No. 14) as to Mr. Accurso's breach of contract, breach of partnership agreement, and civil conspiracy claims against them. The Court will grant the Motion in part and deny it in part.

I.    **RELEVANT BACKGROUND**[2]

Mr. Accurso worked for Infra-Red Services, Inc. ("Infra-Red"), to market and sell roofing services and products. Pursuant to his September 2004 "Independent Contractor Agreement" (hereinafter, "Contract," Docket No. 10-2) with Infra-Red and, Mr. Accurso asserts, Mr. Land, Mr. Accurso was entitled to certain compensation to culminate in his vesting "as a

---

[1] Infra-Red Services, Inc., is also referred to elsewhere as Infra Red Services Co. For sake of consistency, this Memorandum will refer to the entity as designated.

[2] The following summary is based on Mr. Accurso's Amended Civil Action Complaint (Docket No. 10), the allegations in which the Court assumes to be true for purposes of adjudicating Mr. Land and Ms. Strein's Joint Motion for Partial Judgment on the Pleadings (Docket No. 14). *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *infra* Part II (Standard of Review). The Court also notes that Defendants have filed a Counterclaim (Docket No. 11), which is not relevant for present purposes.

50/50 partner," upon fulfillment of certain conditions, either by creation of "a full partnership agreement or a (re) incorporation creating 50/50 shareholder status between Company and Contractor." Contract Schedule B, § 1.B (Docket No. 10-3). Because these conditions were met (as, Mr. Accurso contends, Mr. Land acknowledged), the contractual partnership provision was triggered and Mr. Accurso "was thereafter entitled to 50% of the [Company's] net income." Compl. ¶ 25.

At some point before March 28, 2008, Mr. Land "unilaterally hired his significant other, Defendant Strein, with whom he was then residing . . . , and agreed to pay her based upon leads generated as well as a percentage of the net profits." Compl. ¶ 26. In 2008 and again in 2011, Mr. Land and Ms. Strein, insisting that they suspected Mr. Accurso of diverting business opportunities from the corporate Defendants, required Mr. Accurso to submit to polygraph examinations, and he complied. And in August 2011, Mr. Land and Ms. Strein "formed Defendant Roofing Dynamics Group, LLC, . . . without the input and/or knowledge of Plaintiff Accurso," as part of their fraudulent conspiracy to "force Plaintiff Accurso out of the Company, in order to wrongfully deprive him of the vested partnership interest which he held, and to improperly divert to themselves those monies which were due and owing to Plaintiff Accurso, for their mutual personal benefit." Compl. ¶ 34.

Further, in late 2011, Mr. Land "made numerous comments" to Mr. Accurso about Mr. Accurso's "facial disfigurement which had been caused by [his] Bell's palsy, complained about its potential adverse impact upon customers, and openly joked about his condition with business customers and associates." Compl. ¶ 35. Finally, in January 2012, Richard Berlinger, then counsel for the Defendants-to-be, notified Mr. Accurso that his employment and business relationship with the Defendants was immediately terminated based on the Defendants' claim,

which Mr. Accurso contends is false, that Mr. Accurso had improperly diverted business opportunities from the Defendants (*see* Compl. Ex. C, Docket No. 10-3).

In his Amended Civil Action Complaint (hereinafter "Complaint," Docket No. 10), Mr. Accurso brings claims for breach of contract, breach of the partnership agreement, violation of the Pennsylvania Wage Payment and Collection Law, violation of the federal Employee Polygraph Protection Act, unjust enrichment, intentional infliction of emotional distress, and civil conspiracy.[3] As a result of his wrongful termination, Mr. Accurso claims, he has been deprived of his half-share of more than $800,000 in income collected by the Defendants. And, consequently, he has been unable to maintain his medical insurance or "timely obtain reasonable and necessary medical treatment to address his chronic, debilitating and life-threatening conditions," Compl. ¶ 46, including his non-Hodgkin lymphoma.

Arguing that they cannot be held personally liable for the actions of, or their actions as agents of, their corporations, Mr. Land and Ms. Strein now move for judgment on the pleadings with regard to Counts II (breach of contract), III (breach of partnership agreement), and VII (civil conspiracy) of Mr. Accurso's Complaint. The gravamen of these challenged Counts is that the Defendants breached the 2004 Contract between Mr. Accurso, on the one hand, and Defendants Infra-Red and Mr. Land, on the other; and, further, that Mr. Land and Ms. Strein conspired to deprive Mr. Accurso of the monies he was due under this Contract and the partnership agreement it created, as well as, presumably, intentionally inflict emotional distress through their "fraudulent representations" and "bad faith and outrageous conduct" involved in

---

[3] Mr. Accurso's Complaint is an "Amended Complaint" because it resulted from this Court's February 10, 2014 Order (Docket No. 9) consolidating, after their removal by Ms. Strein and the other Defendants, respectively, two civil actions filed by Mr. Accurso in state court. Removal was based on federal question jurisdiction over Mr. Accurso's claim of violation of the Employee Polygraph Protection Act, 29 U.S.C. § 2001–2009.

"wrongfully terminating [Mr. Accurso's] employment, partnership and business relationship."
Compl. ¶ 80. Mr. Accurso responds that, for several reasons, he can sue Mr. Land and Ms. Strein
individually.

## II.     STANDARD OF REVIEW

The standard for evaluating a motion for judgment on the pleadings under Federal Rule
of Civil Procedure 12(c) for failure to state a claim is the same as the familiar standard used for
evaluating a motion to dismiss under Rule 12(b)(6). *E.g.*, *Turbe v. Gov't of V.I.*, 938 F.2d 427,
428 (3d Cir. 1991); *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010) (citing *Turbe*, 938
F.2d at 428); *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986). In fact, because
"Rule 12(h)(2) provides that '[a] defense of failure to state a claim upon which relief can be
granted' may be advanced in a motion for judgment on the pleadings under Rule 12(c)," the
distinction between a motion under 12(b)(6) and a motion under 12(c) "is purely formal."
*Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).[4]

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8
of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim
showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the
defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl.*

---

[4] The parties appear to be confused about the standard of review. *See, e.g.*, Mem. Opp. 9-10
("it would be inappropriate to enter an order granting partial summary judgment"); Mot. 8
(purportedly citing 11 *Moore's Federal Practice* § 56.30, which does not exist (that section is
"reserved"), and which, if it did, would fall within the summary judgment volume (11) regarding
*Rule 56* (hence § *56*.30)). The equivalency of the Rule 12(c) and Rule 12(b)(6) standards is
uncontroversial. *See, e.g.*, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987)
("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the
pleadings, we must apply the standard for a Rule 12(b)(6) motion in reviewing the district court's
decision." (citing cases)). Thus, notwithstanding its apparently titular similarity, the summary
judgment standard is not applicable.

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss—or a motion for judgment on the pleadings—the plaintiff's complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint (or pleading) is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint (or pleading), the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). The Court may consider undisputedly authentic exhibits attached to the complaint (or pleading) for this purpose. *E.g.*, *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly

authentic documents if the complainant's claims are based upon these documents."). The Court must also accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell*, 598 F.3d at 134; *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988). But that admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)).

*     *     *

Defendants contend that "[a] dismissal pursuant to Rule 12(c) is *with prejudice*." Mot. 8 (emphasis in original). Not so. Although "after an answer has been filed"—as at the judgment on the pleadings stage—"the plaintiff may amend only with leave of court or the written consent of the opposing party," *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing Fed. R. Civ. P. 15(a)), "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2); *accord Shane*, 213 F.3d at 115. In the Rule 12(b)(6) context, this precept dictates that "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *see also, e.g., Andela v. Am. Ass'n for Cancer Research*, 389 F. App'x 137, 142 (3d Cir. 2010) (per curiam) ("This Court has

held that, when a complaint is vulnerable to dismissal on the pleadings, 'a district court must permit a curative amendment, unless an amendment would be inequitable or futile.'" (quoting *Phillips*, 515 F.3d at 236) (Rule 12(c) context)).[5]

The courts in the cases Defendants cite did not hold (or even suggest) otherwise. Those courts simply observed that the district courts below *had* dismissed the pleadings with prejudice, not that such outcomes were or are categorically required.[6] Much to the contrary, as noted above, a court granting a motion for judgment on the pleadings (under Federal Rule of Civil Procedure 12(c), not 56) should freely grant leave to amend pursuant to Rule 15(a)(2). *E.g.*, *Hayden v. Paterson*, 594 F.3d 150, 160-61 & n.9 (2d Cir. 2010). As is clear from the cases cited above and in the margin, dismissal of claims upon a motion for judgment on the pleadings *can* be with prejudice, if amendment would be futile, but there certainly is no categorical rule that judgment on the pleadings is per se with prejudice.[7]

---

[5] A plaintiff must generally move to amend, of course, but dismissing his complaint with prejudice would preclude him from doing so. *See generally, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007) ("[I]n ordinary civil litigation it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint.").

[6] Further, incidentally, *LaRue v. DeWolff, Boberg & Associates, Inc.*, 450 F.3d 570 (4th Cir. 2006), is a curious opinion to cite because it has been *vacated*, 552 U.S. 248.

[7] *See also, e.g.*, *Druz v. Boro of Manasquan*, 53 F. App'x 639 (3d Cir. 2002) ("We exercise plenary review of the dismissal of a complaint under Rule 12(c). We review the denial of a motion to amend the complaint for abuse of discretion." (citations omitted)); *Jablonski*, 863 F.2d at 292 (affirming district court's grant of motion for judgment on the pleadings and explaining that while "[a]mendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss," and amendment was futile in the case at hand, "leave to amend shall be freely given"); *King ex rel. Cephalon Inc. v. Baldino*, 409 F. App'x 535, 539 (3d Cir. 2010) (similar); *Desi'z Pizza, Inc. v. City of Wilkes-Barre*, No. 01-0480, 2006 WL 2460881, at *4 (M.D. Pa. Aug. 23, 2006) ("[A] Rule 12(c) motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion. . . . A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 [& n.16] (1976).").

## III.   DISCUSSION

Mr. Land and Ms. Strein's basic position is that they cannot be held personally liable for the actions of the corporate Defendants for any breach, by the latter, of a contract or partnership agreement with Mr. Accurso. And, further, Mr. Land and Ms. Strein argue, absent valid breach of contract or partnership claims against them, Mr. Accurso cannot maintain his civil conspiracy claim against them. Additionally, they assert that Mr. Accurso's civil conspiracy claim must fail because agents of the same corporation cannot, as a matter of law, conspire amongst themselves. But in their Motion, Mr. Land and Ms. Strein have not challenged Mr. Accurso's claims, ostensibly leveled at all Defendants, for violation of the federal Employee Polygraph Protection Act (Count I), violation of the Pennsylvania Wage Payment and Collection Law (Count IV), unjust enrichment (Count V), or intentional infliction of emotional distress (Count VI).

Mr. Accurso counters that he seeks to hold Mr. Land and Ms. Strein liable for the alleged breaches of contract and partnership agreement not individually, but, rather, on any and all of the theories that (1) Mr. Land voluntarily "undertook [the Contract's] legal obligations from the

---

The resolution of a motion for judgment on the pleadings might also be with prejudice, for instance, if the plaintiff, who, having pleaded all three elements, (a), (b), and (c), of a cause of action, moves for judgment on the pleadings and contends that the defendant has admitted (a), (b), and (c) in his answer and raises no affirmative defenses. But the fact that resolution of a motion for judgment on the pleadings might be with prejudice in certain circumstances does not logically mean that it must always be so, as Defendants here seem to believe or at least urge.

The Court further observes, in the spirit of encouraging professional excellence, that this type of mistake of law can often be avoided by careful surveying of the case law rather than targeted (and tempting) quote-mining. *Cf., e.g.*, *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 336-37 (1906) ("Counsel also say that the question is settled by the decision in *Hawley v. Diller*, *supra*, relying upon the second paragraph in the headnotes . . . . There are two or three answers to this contention. In the first place, the headnote is not the work of the court, nor does it state its decision . . . It is simply the work of the reporter, gives his understanding of the decision, and is prepared for the convenience of the profession in the examination of the reports. . . . And finally, the headnote is a misinterpretation of the scope of the decision.").

outset—as evidenced by his own words in an Agreement which he prepared," Mem. Opp. 10 (Docket No. 17); (2) Mr. Land and Ms. Strein "participated" in the breaches; and/or (3) the corporate veil should be pierced to allow his claims of breach to reach Mr. Land and Ms. Strein.

For the following reasons, the Court will grant Defendants' Motion in part and deny it in part. The Court will dismiss Mr. Accurso's breach of contract and breach of partnership claims without prejudice to revive them with viable corporate veil–piercing allegations, but will, for present purposes, permit Mr. Accurso's civil conspiracy claim to proceed as based, potentially, on his as-yet unchallenged claim of intentional infliction of emotional distress.

### A.       Breach of Contract and Breach of Partnership Agreement

As explained below, the Court holds that Mr. Accurso cannot proceed with his breach of contract or breach of partnership agreement claims under any of the theories he advances. His voluntary undertaking and "participation theory" arguments for Mr. Land and Ms. Strein's individual liability must be dismissed with prejudice, because amendment would be futile, but the Court will permit Mr. Accurso to seek leave to amend his Complaint with respect to his veil piercing allegations.

### 1.       Alleged Voluntary Undertaking of the Contract's Obligations

As the Court noted above and earlier in this litigation, *see* Feb. 10, 2014 Order 2 n.2 (Docket No. 9), the Court may examine the relevant Contract in assessing Mr. Accurso's breach of contract and breach of partnership claims. And as the Court also observed before, *see id.*, that Contract binds "the Company," Infra-Red Services, and is signed by Mr. Land, "President" of the Company, as its "representative."

These observations were then, as they are reaffirmed now, based on basic contract law principles: "It is fundamental contract law" in Pennsylvania "that one cannot be liable for a breach of contract unless one is a party to that contract." *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991), *aff'd*, 618 A.2d 395 (1993). Even "[i]f the alleged contract is in the name of the agent, [if] the name of the principal is disclosed, there exists a strong presumption that it is the intention of the contracting parties that the principal and not the agent should be a party to the contract." *Viso v. Werner*, 369 A.2d 1185, 1187 (Pa. 1977); *see also, e.g.*, *Daniel Adams Assocs., Inc. v. Rimbach Pub., Inc.*, 519 A.2d 997, 1000-01 (Pa. Super. Ct. 1987) ("Where a party contracts with a corporation through a corporate agent who acts within the scope of his authority and reveals his principal, the corporate principal alone is liable for breach of the contract."). Even without more, these principles suggest that the Contract bound only Infra-Red, and not Mr. Land, individually, as well.

Mr. Accurso's suggestion, in turn, is really that, by naming Mr. Land in the Contract, the parties *did intend* to bind him individually. But at a minimum, then, the Contract must be ambiguous as to whether it binds only Infra-Red, or whether it also reaches Mr. Land. In the case of ambiguity, the Court would be required to admit parol evidence for assessment by the factfinder. The "ambiguity of a contract and its interpretation," however, are threshold "questions of law" for the court. If a court finds a contract "unambiguous, the intent of the parties is to be determined by the words used in the contract," without resort to evaluation by the factfinder. *In re Estate of Duran*, 692 A.2d 176, 179 (Pa. Super. Ct. 1997); *accord, e.g.*, *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1424 (3d Cir. 1994) ("Under Pennsylvania law, ambiguous writings are interpreted by the fact finder and unambiguous writings are interpreted by the court as a question of law." (citation omitted)). And

under this paradigm, whether an agent contracting for a disclosed principal may be found personally liable depends on whether "he or she either executes a contract in his or her own name or voluntarily incurs a personal responsibility." *Duran*, 692 A.2d at 179 (citation and internal quotation marks omitted).

Mr. Accurso's contention that his later correspondence with Mr. Land evinces Mr. Land's understanding that Mr. Land is personally bound by the Contract, by its nature, relies on parol evidence and thus puts the cart before the horse: the Court must first ask whether the Contract is ambiguous as to who it binds, *Allegheny Int'l*, 40 F.3d at 1424; *Sanford Inv. Co., Inc. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999)—and it is not.[8]

"A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986); *accord, e.g.*, *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429-30 (Pa. 2001). But a contract is ambiguous

> if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.

*Metzger v. Clifford Realty Corp.*, 476 A.2d 1, 5 (Pa. Super. Ct. 1984) (citation and alteration omitted).

---

[8] Additionally, the Contract expressly provides:

> **No Other Contracts, Binding Nature.** This Agreement constitutes the entire agreement between the parties hereto and their respective officers, directors, or agents, and superseded [sic] all prior agreements, relationships, or negotiations with regard to the subject matter hereof. This Agreement shall be binding upon the respective heirs, successors, assignees, and legal representatives of the parties.

Contract ¶ 22.

11

To determine whether the relevant language is ambiguous, "the court must assess the writing as a whole and not in discrete units." *DiFabio v. Centaur Ins. Co.*, 531 A.2d 1141, 1143 (Pa. Super. Ct. 1987); *cf. also, e.g.*, *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 137 (3d Cir. 2004) ("When interpreting contracts, we are required to read contract language in a way that allows all the language to be read together, reconciling conflicts in the language without rendering any of it nugatory if possible." (Delaware law)). Further, because "it may not be apparent whether a contract is ambiguous without an examination of the context in which the contract was made," courts "may consider, among other things, the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Sanford Inv. Co.*, 198 F.3d at 421 (internal quotation marks and citation omitted). In other words, courts themselves may look to extrinsic evidence if it "will aid in the resolution of ambiguities," and "[i]f, moreover, the extrinsic evidence raises disputed issues of material fact, the court must refer those issues to the fact finder." *DiFabio*, 531 A.2d at 1142-43 (citing *Hutchinson*, 519 A.2d 385); *accord Langer v. Monarch Life Ins. Co.*, 879 F.2d 75, 81 n.8 (3d Cir. 1989) ("Thus, an ambiguity may be revealed by extrinsic evidence not barred by the parol evidence rule and once so demonstrated, evidence of intent which would otherwise be barred by the parol evidence rule is admissible.").

But if, on the other hand, a court finds the pertinent "language . . . unambiguous, [its] analysis ends," *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1239 (Pa. Super. Ct. 2001): "Where . . . the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Gene & Harvey Builders, Inc. v. Pa. Mfrs. Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986) (citation omitted).

Mr. Accurso's strongest argument for ambiguity may be the Contract's prefatory language, which references Mr. Land explicitly by name:

> Independent Contractor Agreement made this 15th day of September 2004 by and between Brian Land / Infra Red Services Co. ("Company"), a Pennsylvania corporation having offices at 1605 Ramblewood Lane, Jamison, PA and Peter Accurso, an independent contractor, an individual with an office in Pennsylvania.

Contract 1.

But while "Brian Land / Infra Red Services Co." is an undeniably sloppy way to refer to the corporation, the Contract nevertheless does just that: it strains reason to argue that "Company" or "a Pennsylvania corporation" can refer to Mr. Land individually, and "[c]ourts should not . . . distort the meaning of the language or strain to find an ambiguity," *Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 172 (3d Cir. 2006) (citing *Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982)); *accord, e.g.*, *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435 (3d Cir. 2006); *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (citing *Steuart*, 444 A.2d at 663 (Pa. 1982)); rather, courts should read contracts "to avoid ambiguities if possible," *Nationwide Mut. Ins. Co. v. Chiao*, 186 F. App'x 181, 185 (3d Cir. 2006) (quoting *St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 525 (3d Cir. 1981)).

Here, the Contract's operative language lays out obligations only between Mr. Accurso and the "Company." *See generally* Contract. The question thus becomes whether "Company," the entity subject to the Contract's obligations, is "reasonably susceptible," *Hutchison*, 519 A.2d at 390, of being understood as including Mr. Land separately and personally. And as a "[w]ord[] of 'common usage' . . . to be construed in [its] natural, plain, and ordinary sense," *Wall Rose Mutual Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. Ct. 2007), "Company" cannot be so understood: a court cannot, as would be required to accept Mr. Accurso's construction, "modify

the plain meaning of the words under the guise of 'interpreting' the [contract]," *id.*; *accord*

*Genaeya Corp. v. Harco Nat. Ins. Co.*, 991 A.2d 342, 347 (Pa. Super. Ct. 2010)—especially

when "Company" clearly appears to refer to "Infra Red Services *Co.*," Contract  1 (emphasis

added).

Finally, the Contract closes:

> IN WITNESS WHEREOF, the parties, by their duly constituted and
> authorized *representatives*, have se [sic] their hand and seals as of the date first
> above written.

THE COMPANY                                        PETER ACCURSO

By:    /s/ Brian Land                                  /s/ Peter Accurso

Contract 6 (emphasis added).

Thus, when the Court "consider[s] the entire document," *Com. of Pa., Dep't of Transp. v.*

*Manor Mines, Inc.*, 565 A.2d 428, 433 (Pa. 1989); *accord Ready Food Prods., Inc. v. Great N.*

*Ins. Co.*, 612 A.2d 1385, 1387 (Pa. Super. Ct. 1992), the Court finds that "reasonably intelligent

persons, considering" the meaning of "the Company" "in the context of the whole [contract],"

would not "differ regarding its meaning," *Musisko v. Equitable Life Assurance Soc.*, 496 A.2d

28, 31 (Pa. Super. Ct. 1985), as referring only to Infra-Red Services, Inc., and not also to Mr.

Land individually and personally.

Mr. Accurso's reference to subsequent correspondence in which Mr. Land referred to the

Contract that Mr. Accurso signed "with me" does not alter the Court's conclusion.[9] "The polestar

of [the ambiguity] inquiry . . . is the language of the [contract]," *Madison Const. Co.*, 735 A.2d at

106, and absent "the existence, *in the contract* the court [is] asked to interpret, of a certain word

or phrase which [is] susceptible to different interpretations," no ambiguity may be found, *Del.*

---

[9] *See* Mem. Opp. 3. The parties should not read this statement, however, as a conclusion that such correspondence is irrelevant to Mr. Accurso's potential pleading of corporate veil–piercing; the Court does not address, much less pre-judge, that question.

*River Port Auth. v. Thornburgh*, 585 A.2d 1123, 1126 (Pa. Commw. Ct. 1989). And here, "Company" is not susceptible to different interpretations. This conclusion of clarity is further bolstered by the Pennsylvania case law reiterating that a "corporation is distinct from its shareholders," even when its "stock is closely held or even held by one stockholder." *Viso*, 369 A.2d at 1188 (quoting *McKenna v. Art Pearl Works, Inc.*, 310 A.2d 677, 680 (Pa. Super. Ct. 1973)). To find that the "Company" also referred to Mr. Land individually would not only flout general principles of corporate law, but it would also distort the Contract's plain language and the apparent utility of naming Mr. Land explicitly because he would be signing the Contract as Infra-Red's representative. *Cf. generally Steuart*, 444 A.2d at 663 ("[R]esort to the plain meaning of language hinders parties dissatisfied with their agreement from creating a myth as to the true meaning of the agreement through subsequently exposed extrinsic evidence. . . .").

The Contract here is clear on its face that the parties—Infra-Red Services and Peter Accurso—intended to bind each other, and not Mr. Land individually. Infra-Red was the disclosed principal, and Mr. Land's inclusion in the Contract's prefatory language, which refers to a "Company" and a "corporation," without some plausible indication—and there is none—that a "company" or "Pennsylvania corporation" means a corporation plus an individual, does not allow the Court to interpret the Contract as ambiguous as to whether Mr. Land is personally bound. *E.g.*, *Banks Eng'g Co., Inc. v. Polons*, 697 A.2d 1020, 1023 (Pa. Super. Ct. 1997) ("Additionally, because we find that the clear language of the contract controls, we cannot accept appellant's invitation to construe it against the drafter, or to look to the parties' conduct to determine what they intended.").[10] Mr. Land signed as Infra-Red's representative, viz., for Infra-

---

[10] This authority also disposes of Mr. Accurso's argument that the Contract should be construed against Mr. Land because he drafted it. *See also, e.g.*, *Sun Co., Inc. (R&M) v. Pa. Tpk. Comm'n*, 708 A.2d 875, 878-79 (Pa. Commw. Ct. 1998) ("Under the rule of *contra proferentem*,

Red, not for himself. The Contract, notwithstanding its overly casual drafting, does not

personally bind Mr. Land as a party. And Ms. Strein is nowhere to be found in the Contract; it

cannot bind her, either.[11]

### 2.    "Participation Theory"

The foregoing discussion should suggest that an individual not bound by a contract

cannot breach it; thus, no individual not bound by a contract can "participate" in its breach, at

least not in any legal sense. Nonetheless, Mr. Accurso claims that he has sufficiently pleaded

breach of contract and partnership agreement claims because Mr. Land and Ms. Strein personally

took actions that harmed Mr. Accurso and "Pennsylvania law recognizes the participation theory

as a basis of liability." Mem. Opp. 10.

"Participation theory" applies only in *tort*, not contract. The excerpt from the case Mr.

Accurso quotes, *Wicks v. Milzoco Builders*, 470 A.2d 86 (Pa. 1983), establishes that "[t]he

general, if not universal, rule is that an officer of a corporation who takes part *in the commission

of a tort* by the corporation is personally liable therefor . . . ." *Id.* at 90 (emphasis added) (citation

omitted). The nonapplicability of the participation theory to the contract context has been made

explicit by the Third Circuit Court of Appeals: "Unless the corporate officer extends promises in

his individual capacity, the participation theory does not apply in the context of an action for

---

any *ambiguous* language in a contract is construed against the drafter and in favor of the other
party if the latter's interpretation is reasonable." (emphasis added)).

[11] The nub of Mr. Accurso's purported breach of contract claims against Mr. Land and Ms.
Strein—as evidenced from the correspondence he cites between Mr. Land and himself—seems
to be that Mr. Land *was* the "Company." If Mr. Accurso can substantiate this understanding, he
might be able to plead a veil piercing theory against Mr. Land (and perhaps Ms. Strein). The
Court discusses the sufficiency of Mr. Accurso's Complaint with regard to corporate veil–
piercing below. *See infra* subsection III.A.3. But Mr. Accurso cannot somehow combine the *idea*
of corporate veil–piercing with principles of contract construction to state a claim against Mr.
Land (or Ms. Strein) individually. *Cf. also infra* note 17.

breach of contract." *Walsh v. Alarm Sec. Grp., Inc.*, 95 F. App'x 399, 402 (3d Cir. 2004)

(citation and internal quotation marks omitted). In essence, then, "participation theory" in the

breach of contract context does not exist because it would add nothing to the rules discussed

above—i.e., that an agent for the corporation to be held personally liable, he must have "made

promises . . . while acting in [his] individual capacity"—that is, intending to bind himself

personally. *Id.* (citing *Bala Corp. v. McGlinn*, 144 A. 823, 824 (1929); *Loeffler v. McShane*, 539

A.2d 876, 879-80 (Pa. Super. Ct. 1988)).[12]

---

[12] Consider as well, for instance, the Pennsylvania Superior Court's reversal of a trial court's holding a Mr. Singh liable on a "participation theory" for what was essentially the corporation's breach of contractual obligations:

> [T]he trial court only found against Singh individually because it determined there was a "conversion" and Singh can be found individually liable on a "participation" theory. That means Singh participated in some kind of misfeasance. We do not believe the evidence is sufficient to establish any kind of "conversion" or other illegal act. . . .
>
> This is a classic situation where an individual wishes to shield himself from personal liability and uses the classic corporate structure, and a supplier knows about both the corporate structure and the financial difficulties of the corporation and chooses to take the risk. The decision by the trial court in this case could drastically undermine our business structure by allowing creditors to end-run the normal burden of piercing the corporate veil under the little used "participation" theory. . . .
>
> Simply calling a contractual dispute a tort does not make it so. Because of this lack of evidence, we do not believe it has been demonstrated that Singh was malfeasant in his actions. Without malfeasance, this is merely a breach of contract by a corporation, and the individual should not be found to be personally liable.

*Parker Oil Co. v. Mico Petro & Heating Oil, LLC*, 979 A.2d 854, 856-57 (Pa. Super. Ct. 2009); *see also, e.g.*, *Electron Energy*, 597 A.2d at 178-79 ("If one is not a party to the contract, one cannot breach it. Therefore, liability for negligent or wrongful acts of a non-party to the contract would have to lie in tort."); Martin Petrin, *The Curious Case of Directors' and Officers' Liability for Supervision and Management: Exploring the Intersection of Corporate and Tort Law*, 59 Am. U. L. Rev. 1661, 1696 (2010) ("[T]he principle of limited liability . . . restricts shareholders' personal liability for the debts and liabilities of the corporation to the extent of their investment and insulates corporate agents from contractual claims." (footnotes omitted)).

Rather than referring to a "breach of contract" or "breach of partnership agreement" in his discussion of participation theory, Mr. Accurso uses phrases such as "personally liable for harm visited upon Plaintiff because of overt actions" and "wrongful acts." Mem. Opp. 10-11. The irony is that even though these words are remarkably vague, they still sound in tort rather than contract. Moreover, the Court has now twice undertaken to remind the parties about the importance of precision. *See* Feb. 10, 2014 Order 4 n.4 ("The . . . Strein Motion to Dismiss and Mr. Accurso's Response thereto cite very little case law and rely, instead, on citations to the broadest of principles and entire statutory schemes, without explaining how they apply to the alleged facts and parties in question." (citation omitted)).

Broad principles have their place. In fact, the following is an example of broad contract principles that further illuminate why participation theory belongs to tort, not contract:

> [The law of contract] never interferes until a promise has been broken . . . . If a breach of contract were regarded in the same light as a tort, it would seem that if, in the course of performance of the contract the promisor should be notified of any particular consequences which would result from its not being performed, he should be held liable for that consequence in the event of non-performance. Such a suggestion has been made. But it has not been accepted as the law. . . . As the relation of contractor to contractee is voluntary, the consequences attaching to the relation must be voluntary. What the event contemplated by the promise is, or in other words what will amount to a breach of contract, is a matter of interpretation and construction.

Oliver Wendell Holmes, Jr., *The Common Law* 271-73 (Belknap 2009) (1881) (footnote omitted). Similarly:

> A contract gives one a right only against the other party to the contract. A tort right, like a property right—which tort rights frequently serve to enforce—is a right against the whole world, enabling one to obtain damages from (for example) a trespasser on one's property with whom one had no previous agreement limiting his right to enter the property. It would be infeasible to make a contract with every potential trespasser to protect oneself against trespass.

Richard A. Posner, *Economic Analysis of Law* 175 (8th ed. 2011).

The implications of contending that participation theory applies to breaches of contract are alarming. Not only would such application of participation theory render the concept of voluntary contract unrecognizable by holding nonpromisors liable,[13] it would also gut the concept of the corporate form by making corporate officers personally liable anytime they acted on the corporation's behalf, because, of course, "a corporation acts only through its agents and officers." *Nix v. Temple Univ.*, 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991).

### 3.      Corporate Veil–Piercing

The corporate form may be disregarded, however, when a party shows that the corporate veil should be pierced. While

> [i]t is true that a corporation . . . is normally regarded as a legal entity separate and distinct from its shareholders . . . [t]his legal fiction of a separate corporate entity . . . will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless. . . . [W]henever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded.

*Ashley v. Ashley*, 393 A.2d 637, 641 (Pa. 1978); *see also, e.g.*, *Kellytown Co. v. Williams*, 426 A.2d 663, 668 (Pa. Super. Ct. 1981).

Mr. Accurso argues that in this case, "where the corporate Defendants essentially have no assets, the entities should not be used as a shield for wrongful conduct." Mem. Opp. 11. He contends that

> it would be inappropriate to enter an order granting partial summary judgment [sic] where the reasonable expectation is that discovery will reveal supporting evidence. This is particularly true where the evidence is expected to establish that

---

[13] The cause of action of tortious interference with a contractual relationship is another matter. *But see, e.g.*, Petrin, *supra* note 12, at 1706 ("Courts have developed the defense of 'economic justification' to shield directors and officers from claims alleging liability for tortious interference with another's contract.").

> the corporate Defendants maintained no physical office outside the individual Defendants' home, owned no real estate, owned no equipment of value (other than a pair of infra-red cameras), owned no product or materials, owned no inventory, had no treasury or capital, and had essentially no other corporate assets of any kind—but rather served as pass-through entity by which payments to individual members were processed. Furthermore, it is respectfully suggested that it would also be premature at this juncture to make a determination regarding individual liability where the possibility of piercing the corporate veil under the circumstances exists.

Mem. Opp. 9-10. These factors are sufficient, he implies, to render "piercing the corporate veil . . . appropriate to prevent fraud, illegality, or injustice." Mem. Opp. 12.

But the standard a party must meet to persuade a court to pierce the corporate veil is a stringent one. *See, e.g.*, *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) ("Such a burden is notoriously difficult for plaintiffs to meet."). Pennsylvania courts presume the legitimacy of the corporate form and will not pierce the veil unless exceptional circumstances warrant such an exceptional remedy. *E.g.*, *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). Factors relevant to whether the corporate veil should be pierced include "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Id.* (citing *Dep't of Envtl. Res. v. Peggs Run Coal Co.*, 423 A.2d 765 (Pa. Commw. Ct. 1980)); *see also, e.g.*, *Pearson*, 247 F.3d at 484-85 ("The Third Circuit alter ego test is fairly typical of the genre. It requires that the court look to the following factors: gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder."); *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 333 n.7 (3d Cir. 2000) ("Factors considered under Pennsylvania law, for example, with respect to the alter ego theory include, but are not limited to, the following . . . ."); *Plastipak*

*Packaging, Inc. v. DePasquale*, 75 F. App'x 86, 88 (3d Cir. 2003) (per curiam). Under the "alter ego" veil piercing subtheory—which is "applicable when '"the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable,"'" *Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC*, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004) (quoting *Good v. Holstein*, 787 A.2d 426, 430 (Pa. Super. Ct. 2001) (quoting *Miners, Inc. v. Alpine Equip. Corp.*, 722 A.2d 691, 695 (Pa. Super. Ct. 1998)))—the party that seeks to pierce the corporate veil must show that the "lack of [corporate] formalities led to some misuse of the corporate form," *id.* at 1279; *see Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1521 (3d Cir. 1994) ("That remedy is available only if it is also shown that a corporation's affairs and personnel were manipulated to such an extent that it became nothing more than a sham used to disguise the alter ego's use of its assets for his own benefit in fraud of its creditors. In short, the evidence must show that the corporation's owners abused the legal separation of a corporation from its owners and used the corporation for illegitimate purposes." (citing *Zubik v. Zubik*, 384 F.2d 267 (3d Cir. 1967)), *aff'd*, 514 U.S. 938 (1995).

Although veil-piercing is not a separate cause of action, but rather a basis for a cause of action against particular individuals, on a motion to dismiss (or motion for judgment on the pleadings), a court "must examine . . . whether the facts pleaded . . . state a cause of action on a theory of piercing the corporate veil." *Lumax*, 669 A.2d at 895. "[A]verments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in *Twombly*, such averments cannot support a veil-piercing claim." *Cent. Transp., LLC v. Atlas Towing, Inc.*, 884 F. Supp. 2d 207, 217 (E.D. Pa. 2012) (quoting *Shenango Inc. v. Am. Coal Sales Co.*, No. 06-149, 2007 WL 2310869, at *4

(W.D. Pa. Aug. 9, 2007) (citing *Lumax*, 669 A.2d at 895-96)).[14] In relevant cases in which veil piercing theories survive motions to dismiss, "the plaintiffs . . . pled the quantum of facts necessary to give rise to the reasonable inference that the alter ego test could be satisfied." *18 KT.TV, LLC v. Entest Biomed., Inc.*, No. 11-0244, 2011 WL 5374515, at *9 & n.2 (M.D. Pa. Nov. 7, 2011).

Here, Mr. Accurso has not *alleged* sufficient facts to allow his Complaint to give rise to a plausible theory of veil piercing. The fact that office addresses may have been shared by individuals and corporations, or may have been post office boxes, *see* Compl. ¶¶ 7-9—a common occurrence, one might suppose, with small corporations—or that Mr. Land spoke in the first person regarding Mr. Accurso's alleged obligations to his corporations, *e.g.*, Compl. ¶ 28, or even that Mr. Land wore many hats, *see* Compl. ¶ 10, is not enough.[15] The Court is mindful of Mr. Accurso's argument in his Memorandum in Opposition that

---

[14] *Accord, e.g.*, *Madonna v. Francisco*, No. 13-807, 2014 WL 981568, at *4-5 (E.D. Pa. Mar. 13, 2014); *Patroski v. Ridge*, No. 11-1065, 2011 WL 4955274, at *4 (W.D. Pa. Oct. 18, 2011); *Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, 700 F. Supp. 2d 720, 737-38 (W.D. Pa. 2010); *Essex Ins. Co. v. Miles*, No. 10-3598, 2010 WL 5069871, at *3 (E.D. Pa. Dec. 3, 2010); *Allen v. Chicago Steel (PA), LLC*, No. 10-1931, 2010 WL 2991214, at *8 (E.D. Pa. July 27, 2010); *USTAAD Sys., Inc. v. iCAP Int'l Corp.*, No. 09-CV-1149, 2010 WL 2838593, at *3 (M.D. Pa. July 16, 2010) ("USTAAD's complaint fails to meet the exacting standard required to pierce the corporate veil under Pennsylvania law. . . ."); *see also, e.g.*, *Motorola, Inc. v. Airdesk*, Inc., No. 04-4940, 2005 WL 894807, at *2 (E.D. Pa. Apr. 15, 2005) ("While Pennsylvania courts do not squarely address whether a claim for piercing the corporate veil is an independent cause of action, they do allow such a claim to proceed if it is supported by specific factual averments, rather than mere legal conclusions."); *E-Time Sys., Inc. v. Voicestream Wireless Corp.*, No. 01-5754, 2002 WL 1917697, at *12 (E.D. Pa. Aug. 19, 2002) (pre-*Twombly–Iqbal*) ("Yet common ownership and the sharing of office space, standing alone, are insufficient to warrant the conclusion that E-Time actually is the alter ego of USC.").

[15] Mr. Accurso alleges that "[a]fter the execution of the [Contract], both Defendant Roofing Dynamics, Inc., and also Defendant Roofing Dynamics Group, LLC, assumed the business of defendant Infra-Red Services, as well as its obligations pursuant to the [Contract] with respect to Plaintiff Accurso." Compl. ¶ 22. Notwithstanding the arguably conclusory nature of this allegation and the permissibility of pleading in the alternative, the Court finds this allegation telling. If Mr. Accurso's theory is that Mr. Land and Ms. Strein formed Roofing Dynamics, Inc.,

> the evidence is expected to establish that the corporate Defendants maintained no physical office outside the individual Defendants' home, owned no real estate, owned no equipment of value (other than a pair of infra-red cameras), owned no product or materials, owned no inventory, had no treasury or capital, and had essentially no other corporate assets of any kind—but rather served as pass-through entity by which payments to individual members were processed.

Mem. Opp. 9-10. But to the extent that these contentions, if true, are sufficient to sustain a corporate veil–piercing theory of individual liability—and the Court expresses no opinion on that question—they must be properly pleaded.[16] The Court will thus dismiss the breach of contract

---

or Roofing Dynamics Group, LLC, for the sole purpose of avoiding Infra-Red's contractual obligations to Mr. Accurso, *see* Compl. ¶¶ 33–34 ("[u]pon information and belief"), that concept might—and the Court need not say, at the present juncture—militate in favor of piercing the corporate veil. But the pleading requirements for corporate veil–piercing, as discussed above, remain. *See also, e.g.*, *Madonna v. Francisco*, No. 13-807, 2014 WL 981568, at *4-5 (E.D. Pa. Mar. 13, 2014) (discussing the insufficiency of veil piercing allegations made "on information and belief").

Mr. Accurso's other theory, supported by the January 4, 2012 letter attached to his Complaint (Ex. C, Docket No. 10-3), is of Roofing Dynamics, Inc.'s, and Roofing Dynamics Group, LLC's successor liability. These corporate Defendants have not challenged the breach of contract claims and, indeed, would be hard-pressed to do so given the Counterclaim they have filed relying on the very Contract itself.

[16] *See, e.g.*, *Lim v. Rajan*, No. 13-1385, 2013 WL 5272845, at *4 (E.D. Pa. Sept. 18, 2013) ("Lim has failed to plead any facts to support piercing the veil. He simply alleges that STV did not compensate Lim and is in breach of the Employment Agreement and the Purchase Agreement. Even if Rajan executed the agreements as STV's CEO and Lim's post-breach dealings with STV were often through Rajan, these allegations are not the 'exceptional circumstances' that must be pleaded before the court may pierce the corporate veil. There have been no facts set forth in the complaint to show that Rajan was operating in anything other than a representative capacity for STV."); *Nelson v. Allan's Waste Water Serv., Inc.*, No. 11-01334, 2013 WL 4045787, at *5-6 (W.D. Pa. Aug. 8, 2013) ("Pennsylvania law requires that a veil piercing claim be supported by specific factual averments, rather than mere legal conclusions. *See Lumax*, 669 A.2d at 895. In *Lumax*, based on public policy, the Pennsylvania Supreme Court refused to permit a veil piercing claim to proceed where the complaint stated only conclusory allegations. *See id.* Rather, the pleader must state facts showing a reason to pierce the corporate veil.").

None of this is to say that *all* the relevant factors must be pleaded, either. *See, e.g.*, *ASD Specialty Healthcare Inc. v. New Life Home Care Inc.*, No. 11-068, 2011 WL 5984024, at *4 (M.D. Pa. Nov. 29, 2011) ("[At the motion to dismiss stage], ASD has adequately established that it may be appropriate to pierce the corporate veil and hold Mr. Malia liable for New Life's debts. Although it does not satisfy every factor of the veil-piercing test, ASD's amended

claim as to Mr. Land and Ms. Strein under a corporate veil–piercing theory without prejudice.

*See, e.g.*, *Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, 700 F. Supp. 2d 720, 737-38

(W.D. Pa. 2010) ("In the absence of anything more than a recitation of the elements necessary to

hold Hometown and/or Mr. Kazas liable under the piercing of the veil theory or the alter ego

theory, Counterclaim V will be dismissed in its entirety. However, the Court will permit

Defendants to amend their counterclaims to cure the shortcomings of their initial pleading

inasmuch as we hesitate at this stage of the litigation to find such an amendment would be

inequitable or futile." (citing *Phillips*, 515 F.3d at 236)); *USTAAD Sys., Inc. v. iCAP Int'l Corp.*,

No. 09-CV-1149, 2010 WL 2838593, at *4 (M.D. Pa. July 16, 2010); *cf., e.g,*, *Stein v. Fenestra*

*Am., L.L.C.*, No. 09-5038, 2010 WL 816346, at*6 (E.D. Pa. Mar. 9, 2010) ("The Court will grant

a period of limited discovery on these issues and allow the Plaintiffs to amend their Complaint to

allege facts supporting their argument that Zeluck and Fenestra are jointly and severally liable

for the debts of each other.").

\*   \*   \*

None of Mr. Accurso's theories—individual intent to be bound, participation, or

corporate veil–piercing—can sustain Count II, for breach of contract, against Mr. Land or Ms.

Strein. Count II is therefore dismissed as to Mr. Land and Ms. Strein with prejudice as to Mr.

Accurso's individual intent and participation theories, and without prejudice as to his corporate

veil–piercing theory; amendment of the Complaint as to the former would be futile, but not,

necessarily, as to the latter (especially given Mr. Accurso's averments, located improperly in his

briefing). *See Phillips*, 515 F.3d at 228.

─────────────────────────────

complaint asserts that Mr. Malia siphons funds from New Life for his own personal use, that he
has total control over the decisions of New Life, and that New Life is insolvent. These
allegations are sufficient to withstand a motion to dismiss."). Nor is any of it to say, for instance,
that Mr. Land's correspondence with Mr. Accurso is not relevant to the veil piercing question.

For these same reasons, Count III, for breach of partnership agreement, must also fail. This claim is based, as pleaded, on Mr. Accurso's Contract with InfraRed Services, *see* Compl. ¶ 62, and thus, in the absence of a basis for a binding partnership between Mr. Accurso and Mr. Land separate from the Contract, which, as the Court has explained, does not bind Mr. Land personally, the Court must dismiss Count III (likewise, for the similar reasons, without prejudice).

### B.     Civil Conspiracy

Defendants, arguing that "the actions identified as the basis for [Mr. Accurso's] civil conspiracy claim [Count VII] are the very same actions identified as the basis for [Mr. Accurso's] breach of contract and breach of partnership agreement claims," Mot. 13, contend that without a "viable breach of contract or breach of partnership agreement claim . . . , the civil conspiracy claim must fail," Mot. 14. The Court agrees with the second premise, namely, that without a viable underlying substantive claim, a civil conspiracy claim may not lie. But Defendants' conclusion does not necessarily follow from their premise, because Mr. Accurso's civil conspiracy claim might be based on another cause of action.

Pennsylvania law mandates that "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004) (quoting *McKeeman v. Corestates Bank*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000)). A plaintiff charging civil conspiracy must therefore "plead or develop a[] separate underlying intentional or criminal act that can support a civil conspiracy claim." *Id.*

Mr. Accurso seems to ignore this point in both his Complaint and in his briefing. Mr. Accurso's Complaint alleges that

> Defendant Land conspired and acted in concert with Defendant Strein, the significant other of Land, with a common purpose to deprive Plaintiff Accurso of monies to which he was entitled, to improperly divert those monies to Defendant Land and Defendant Strein, to withhold prompt and proper payment as agreed, and to thereby cause harm to Plaintiff Accurso.

Compl. ¶ 82. Similarly, at several places in his papers, Mr. Accurso argues that Mr. Land and Ms. Strein formed "a conspiracy to benefit themselves individually and harm Plaintiff personally." Mem. Opp. 6; *see id.* 7, 12-13 ("[I]t is specifically averred that Defendant Land and Defendant Strein committed overt acts in pursuit of their common purpose with an intent to injure Accurso."). But nowhere does Mr. Accurso make clear just what tortious activity Mr. Land and Ms. Strein allegedly conspired to do, although the allegations seem to suggest that some sort of a conversion claim was what was intended.[17] Instead, Mr. Accurso appears to rely on a generic incorporation allegation. *See* Compl. ¶ 81 ("Plaintiff Accurso hereby incorporates

---

[17] One suspects conversion, embezzlement-type, or fraud claims, if otherwise appropriate, could be leveled against Mr. Land to the extent that he was employing a corporate form knowingly to deprive Mr. Accurso of money Mr. Accurso worked for. Suppose, for instance, that

> *A* and *B* make a written contract. Later *A* sues *B* claiming that during the negotiations *B* deliberately misrepresented the benefits that *A* would derive from the contract. *A* does not sue for breach of contract. He can't; the parol evidence rule would bar a claim that promises made during the negotiations but not repeated in the contract should be deemed contractually binding. So *A* sues *B* in tort, charging fraud. The parol evidence rule is not a rule of tort law. . . .

Posner, *supra*, at 182. The Court offers no opinion as to whether such claims would be "otherwise appropriate," but offers the discussion simply to illustrate the deficiencies apparent in the way Mr. Accurso's Complaint is pleaded. (Further, Mr. Accurso's attempt to invoke what is ostensibly the alter ego theory of corporate veil–piercing would seem to suggest he perceives that he has been harmed by the Defendants' fraud.) *But see, e.g.*, *Stein v. Fenestra Am., L.L.C.*, No. 09-5038, 2010 WL 816346, at *7 (E.D. Pa. Mar. 9, 2010) ("Despite the window dressing, this Court sees right through the Steins' tort claims and recognizes this case for what it is: a breach of contract action.").

the preceding paragraphs, as though fully set forth herein."). Thus, the Court must consider whether the remainder of Mr. Accurso's Complaint alleges a predicate tort.

Although the Court doubts that Mr. Accurso could base his civil conspiracy claim on a breach of contract or breach of partnership agreement claim, because such wrongs, even if proven, are not *tortious*, the Court need not reach that question because it is dismissing those claims. *See Nix*, 596 A.2d at 1137 (quoting *Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987)); *see also, e.g.*, *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405-06 (3d Cir. 2000) ("[W]e are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct." (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999))).[18] Thus, to the extent that Mr. Accurso's civil conspiracy claim is founded on either his breach of contract or breach of partnership claims, it, too, must fail.

But Mr. Accurso still has an intentional infliction of emotional distress claim against the Defendants. Mr. Land and Ms. Strein's Motion for Judgment on the Pleadings does not address this potential predicate tort, but instead argues generally that "to the extent [that Mr. Accurso's]

---

[18] *Compare also, e.g.*, *Pelagatti*, 536 A.2d at 1341-42 ("[A]bsent *a civil cause of action* for a particular act, there can be no cause of action for civil conspiracy to commit that act." (emphasis added)), *with Orthopedic Bone Screw Prods.*, 193 F.3d at 789 ("The established rule is that a cause of action for civil conspiracy requires *a separate underlying tort* as a predicate for liability." (emphasis added)), *and Burnside v. Abbott Labs.*, 505 A.2d 973, 981 (Pa. Super. Ct. 1985) (citing with approval a case in which "the plaintiffs were required to allege and prove that the defendant had entered into an unlawful agreement for the express purpose of committing either a criminal act or an intentional tort").

Moreover, it would make little sense to allow a civil conspiracy claim to be based on breach of contract: civil conspiracy is a means of establishing vicarious liability, but, generally, the only entities potentially liable for breach of contract are those who are (a) parties to the contract and (b) breached some material term of that contract. In other words, the concept of vicarious liability is itself in tension with the breach of contract cause of action, and saying that two entities that breached a contract conspired to do so is a rather meaningless argument given that both would be directly liable. *Cf. supra* subsections III.A.1 & .2; *infra* note 23.

conspiracy allegations encompass actions that Mr. Land and Ms. Strein took in their roles as principals and/or officers" of the corporate Defendants, no civil conspiracy claim can lie because "'agents of a single entity cannot conspire among themselves.'" Mot. 14 (quoting *Grose v. Procter & Gamble Paper Prods.*, 866 A.2d 437, 441 (Pa. Super. Ct. 2005) (quoting *Rutherfoord v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 508 (Pa. Super. Ct. 1992))). And, indeed, this "intracorporate conspiracy doctrine" generally bars conspiracy claims against agents and their principals. *E.g.*, *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (citing *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999)).

Mr. Accurso retorts that Mr. Land and Ms. Strein were not conspiring as agents of one of their alleged corporate forms, but rather "as individuals in a significant other relationship," and that "[i]t is certainly a reasonable inference that Defendant Land and Defendant Strein acted for their own personal benefit and not for any alleged corporate benefit." Mem. Opp. 12-13. Although he does not cite any authorities on this specific point, Mr. Accurso's argument is, in essence, an assertion of an exception to the intracorporate conspiracy doctrine for situations in which an officer "act[ed] in a personal, as opposed to official, capacity. That is, an exception exists 'when the employees have acted for their sole personal benefit.'" *Gen. Refractories Co.*, 337 F.3d at 313-14 (citations omitted) (quoting *Heffernan*, 189 F.3d at 412).[19]

This personal benefit exception to the intracorporate conspiracy doctrine is poorly defined, if in fact it exists. As noted in the margin, the Third Circuit Court of Appeals has addressed the exception largely by analogy, through the 42 U.S.C. § 1985 and attorney-client relationship contexts. In a holding in the core corporate context, in *Johnston v. Baker*, 445 F.2d

---

[19] The holding in *Heffernan* was in the context of 42 U.S.C. § 1985, but in *General Refractories Co.*, the Third Circuit Court of Appeals explained that the plaintiff bringing a Pennsylvania civil conspiracy claim for an alleged conspiracy between an attorney and client had not established that the *Heffernan* exception applied.

424 (3d Cir. 1971), the Third Circuit Court of Appeals summarily rejected the "contention . . .

that a corporation may not be guilty of a conspiracy with its officers and agents" when the

conspiracy complained of "consisted of acts done by the corporation," two employees who,

"testimony indicat[ed, had] acted as a result of personal motives," and a nonemployee. *Id.* at

426-27. As at least one district court has since observed, *Johnston* proposes that "a corporation

can conspire with its agents or employees if the agents or employees are acting not for the

corporation, but for personal reasons and one of the parties to the conspiracy is not an agent or

employee of the corporation," and *Johnston*'s "rule has been liberally construed . . . so as to

allow a civil conspiracy claim to proceed where agents or employees act outside of their

corporate roles even in the absence of a co-conspirator from outside the corporation." *Tyler v.

O'Neill*, 994 F. Supp. 603, 613 (E.D. Pa. 1998), *aff'd*, 189 F.3d 465 (3d Cir. 1999).

At the same time, at least one panel of the Pennsylvania Superior Court, in a

nonprecedential decision, has opined that no such "exception" to the intracorporate conspiracy

doctrine "is recognized by Pennsylvania state courts." *Lilly v. Boots & Saddle Riding Club*, No.

57 C.D. 2009, 2009 WL 9101459, at *6 (Pa. Commw. Ct. July 17, 2009).[20] To make matters

worse, yet another Superior Court decision suggests (again with little explanation) that the

exception does exist. *Gordon v. Lancaster Osteopathic Hosp. Ass'n, Inc.*, 489 A.2d 1364, 1372

---

[20] The court explained:

> Plaintiffs, citing federal case law (including an unpublished opinion) argue
> that an exception to this doctrine should apply. Specifically, Plaintiffs contend
> that "[w]here the officer or director acts solely to injure the plaintiff rather than as
> an officer or director seeking to advance the interests of the corporation, a cause
> of action for civil conspiracy has been sufficiently pled." However, this is not an
> exception that is recognized by Pennsylvania state courts. The authority found by
> this Court supports the trial court's analysis that board members cannot be said to
> conspire with each other or with the corporation. *See, e.g.*, *Grose*. Accordingly,
> we conclude that Plaintiffs have not raised a cognizable civil conspiracy claim.

*Lilly*, 2009 WL 9101459, at *6 (citation and footnote omitted).

(Pa. Super. Ct. 1985) ("[S]ufficient facts have been alleged to allow count 7 of the complaint to proceed to trial. We cannot, at this point, accept appellees' theory that a conspiracy cannot occur in the context of the 'single entity' of a hospital and its medical staff. In the instant case, appellant has alleged that appellees did not have the responsibility or legal function to review the professional abilities of other professional staff members under the medical staff constitution and by-laws." (citations omitted)). Of course, the operative question is whether the Pennsylvania Supreme Court would recognize such an exception, *see Boyanowski*, 215 F.3d at 406, and, based on the Court's research (not aided by the parties), the answer is unclear. *Cf., e.g.*, *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 473 (Pa. 1979) ("To hold that Ralph could have entered into an illegal agreement with the legal entity of which he was sole stockholder, director and officer would be without legal or rational basis. Summary judgment was therefore properly entered as to Ralph and Pike Coal on the conspiracy charge.").

For several reasons, then—including the indicated indeterminacy of the case law—Mr. Accurso's civil conspiracy claim should be permitted to proceed, at least for now. Bad facts make bad law, and while a determination that Mr. Accurso categorically cannot establish that he has raised a viable predicate cause of action for his conspiracy claim that might fall into the private benefit exception to the intracorporate conspiracy doctrine (if one exists) might eventually be vindicated, little harm results to the Defendants from allowing the count to proceed. After all, as should be clear from the principles laid out above, "[s]ince liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." *Beck v. Prupis*, 529 U.S. 494, 503 (2000) (parenthetically quoting *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983)); *accord Boyanowski*, 215 F.3d at 407; *Orthopedic*

*Bone Screw Prods.*, 193 F.3d at 788-90 & n.7. Defendants here have not yet challenged Mr. Accurso's intentional infliction of emotional distress claim, and, because, at least as the Court reads it, that claim challenges the actions of all the Defendants, as long as that claim survives, Mr. Accurso's civil conspiracy claim has some foothold at the motion to dismiss stage.[21]

At the same time, the Court reemphasizes the limited basis for its holding allowing Mr. Accurso's civil conspiracy claim to proceed: his intentional infliction of emotional distress claim plus allegations of the character that Mr. Land and Ms. Strein "formed Defendant Roofing Dynamics Group, LLC, . . . without the input and/or knowledge of Plaintiff Accurso," as part of their fraudulent conspiracy to "force Plaintiff Accurso out of the Company, in order to wrongfully deprive him of the vested partnership interest which he held, and to improperly divert to themselves those monies which were due and owing to Plaintiff Accurso, for their mutual personal benefit," Compl. ¶ 34, because of their potential for bringing Mr. Land and Ms. Strein outside the bounds of the intracorporate conspiracy doctrine. But the Court will also note the serious question that arises as to whether such allegations and Mr. Accurso's predicate intentional infliction of emotional distress claim align—indeed, whether intentional infliction of

---

[21] *Duffy v. Lawyers Title Ins. Co.*, No. 11-4503, 2012 WL 602192, at *4 (E.D. Pa. Feb. 24, 2012) ("At this stage of the proceedings, the exact relationship of the parties cannot be ascertained. . . . [B]ecause it is unclear whether Bennett and Doherty may have been acting outside the scope of employment or acting within the scope of its authority, but in a negligent and fraudulent manner, I will not dismiss the civil conspiracy claim based on the intracorporate conspiracy doctrine at this time."); *Allison v. Chesapeake Energy Corp.*, No. 12-0900, 2013 WL 787257, at *10 (W.D. Pa. R&R Jan. 29, 2013), *adopted*, 2013 WL 787180 (Mar. 1, 2013) ("Pennsylvania's 'single entity' prohibition is not iron-clad, and its courts have recognized that, in the right set of circumstances, conspiracy may occur within a single entity."); *Doe v. Kohn, Nast & Graf, P.C.*, 862 F. Supp. 1310, 1328 (E.D. Pa. 1994) ("This rule has been read expansively to allow a claim for civil conspiracy to go forward where agents or employees act outside of their roles as officers and employees of the corporation even in the absence of a co-conspirator from outside the corporation. . . . There is enough evidence in the record to raise an inference that at some point he learned of the plaintiff's HIV status and conspired to get him out of the firm. I thus conclude that there is a genuine issue of material fact over whether Steven Asher acted for the firm or for himself.").

emotional distress (and breach of contract and partnership agreement) is even the correct cause of action based on Mr. Accurso' conception of what occurred.[22]

Finally, the Court need not reach the question of whether a civil conspiracy claim could be founded upon Mr. Accurso's other remaining claims, namely, for unjust enrichment and for violation of the federal Employee Polygraph Protection Act ("EPPA") and the Pennsylvania Wage Payment and Collection Law ("WPCL"). The parties did not brief this issue, and the Court, upon cursory review of the case law, did not find the issue directly addressed. *Cf., e.g.*, *Alpha Pro Tech, Inc. v. VWR Int'l LLC*, No. 12-1615, --- F. Supp. ----, 87 Fed. R. Serv. 3d 1, 2013 WL 6179065, at *20 (E.D. Pa. Nov. 26, 2013) ("APT cannot base its tortious interference claim on its unjust enrichment claim as an independently actionable basis. For one, unjust enrichment does not sound in tort; rather, it is a restitutionary cause of action based on an implied or constructive contract."); *Orthopedic Bone Screw Prods.*, 193 F.3d at 790 ("A claim of civil conspiracy cannot rest solely upon the violation of a federal statute for which there is no corresponding private right of action."). Further, the vicarious liability reasoning behind the common law prohibition on civil conspiracy, *see, e.g.*, *Beck*, 529 U.S. at 503, *Boyanowski*, 215 F.3d at 407; *Orthopedic Bone Screw Prods.*, 193 F.3d at 788-90 & n.7, would make civil conspiracy claims based on such causes of action rather suspect.[23]

---

[22] Mr. Accurso's breach of contract and breach of partnership agreement counts against Mr. Land and Ms. Strein would seem to accord, to the extent that he can sufficiently allege a corporate veil–piercing theory, with his conception of how they wronged him. But to the extent that Mr. Land's and Ms. Strein's allegedly harmful conduct might still be actionable if the corporate veil cannot be pierced, one is left to wonder whether other causes of action would better align with Mr. Accurso's allegations.

[23] As the Court explained for a different purpose in its February 10, 2014 Order (Docket No. 9),

"Under Pennsylvania law, when a corporation fails to pay wages and benefits that it owes its employees, the corporation's top officers can be held personally liable for the non-payments." *Belcufine v. Aloe*, 112 F.3d 633, 634 (3d Cir. 1997) (Alito,

J.). Thus, it clearly does not matter whether an officer of Infra-Red or its successor—here, allegedly, Ms. Strein—was a party to an agreement between Mr. Accurso and Infra-Red: under the WPCL, the term "employer" "[i]ncludes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and *any agent or officer* of any of the above-mentioned classes employing any person in this Commonwealth." 43 Pa. Cons. Stat. Ann. § 260.2a (emphasis added). For a determination that Ms. Strein was such a qualifying officer, "evidence of an active role in decision making is required"—"the legislature [did not] intend[] liability merely by virtue of holding corporate office." *Mohney v. McClure*, 568 A.2d 682, 686 (Pa. Super. Ct. 1990), *aff'd*, 604 A.2d 1021 (Pa. 1992); *accord Int'l Ass'n of Theatrical Stage Emps., Local Union No. 3 v. Mid-Atl. Promotions, Inc.*, 856 A.2d 102, 105 (Pa. Super. Ct. 2004).

Feb. 10, 2014 Order 2-3 n.3 (alteration removed). A civil conspiracy overlay either would seem to flout the purpose of the WPCL as described in the case law by allowing those without "an active role in decision making" to conspire to do something that they lack corporate power to do, or, alternatively, would seem nugatory by enabling a plaintiff to hold vicariously liable someone who is already directly liable.

Much the same might be said about the EPPA:

Ms. Strein's facile suggestion that she is not an "employer" for purposes of the [EPPA], 29 U.S.C. § 2001–2009, appears to disregard the statutory definition of "employer." "The term 'employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." *Id.* § 2001; *see also* 29 C.F.R. § 801.2(c). Courts use the "economic reality" test to determine whether a party is an employer under the EPPA. *See, e.g.*, *Watson v. Drummond Co., Inc.*, 436 F.3d 1310, 1316 (11th Cir. 2006) ("This Circuit has also used the economic reality test in determining whether a party is an employer for the purposes of other federal employee protection statutes with definitions of 'employer' similar to that of the EPPA. . . . [W]e find the economic reality test appropriate here as well."); *Fernandez v. Mora-San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1248 (10th Cir. 2006) ("Other courts have adopted the 'economic reality' test to determine whether a polygraph examiner is an 'employer' for purposes of the EPPA."); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 727 (5th Cir. 2002) ("We conclude that the 'economic reality' test is the better approach . . . ."); *see also Sanchez v. Prudential Pizza, Inc.*, 10 CV 6289, 2011 WL 5373976, at *2-3 (N.D. Ill. Nov. 2, 2011). Although Mr. Accurso's allegations regarding EPPA are indeed thin, determining whether a defendant officer was an employer for EPPA purposes is a fact-intensive inquiry and thus one that is appropriate, perhaps, at the motion for summary judgment stage, but, at least here, not at the motion to dismiss stage. *See, e.g.*, *Miller v. Natural Res. Recovery, LLC*, No. 10-537, 2011 WL 3841641, at *6 (M.D. La. Aug. 29, 2011) ("[W]hether or not the . . . defendants may be deemed employers under the EPPA requires a factual inquiry beyond the scope of the pleadings."). Further, Ms. Strein's suggestion that one of Pennsylvania's limited liability laws

IV.     **CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Mr. Land and Ms. Strein's Motion to Dismiss. The Court will dismiss Mr. Accurso's claims against Mr. Land and Ms. Strein for breach of contract and breach of partnership agreement without prejudice to Mr. Accurso to attempt properly to plead a corporate veil–piercing theory. The Court will permit Mr. Accurso's civil conspiracy claim to proceed based on his unchallenged intentional infliction of emotional distress claim.

An Order consistent with this Memorandum follows.


BY THE COURT:


 /s/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

could "shield[ her] from personal liability" under EPPA, Strein Mem. at 14-15, is, on its face, entirely meritless: the EPPA provides a *federal* cause of action that cannot be limited by state law.

Feb. 10, 2014 Order 3 n.3.