IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PETER ACCURSO,** | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **INFRA-RED SERVICES, INC., et al.,** | : | NO. 13-7509 |
| *Defendants*. | : | |

MEMORANDUM

PRATTER, J.                                                              MARCH 11, 2016

Peter Accurso has brought suit against his former employers, Brian Land, Audrey Strein, and three roofing companies established by Mr. Land and Ms. Strein[1], alleging violation of the Employee Polygraph Protection Act (EPPA), 29 U.S.C. § 2001 *et seq*., breach of contract, intentional interference with contract, violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. Ann § 260.1 *et seq*., and civil conspiracy. The Defendants have responded with counter claims against Mr. Accurso, alleging breach of contract, breach of fiduciary duty, usurpation of corporate opportunity, fraud, intentional interference with prospective contractual relationships, and misappropriation of trade secrets.

In August, the Court granted in part and denied in part the Defendants' motion for summary judgment. *See Accurso v. Infra-Red Servs., Inc.*, 119 F. Supp. 3d 316 (E.D. Pa. 2015).[2] Trial in this matter is currently scheduled to commence on April 1, 2016. Pending before the Court are motions *in limine* filed by Mr. Land, Ms. Strein and the corporate defendants (Doc. No. 91) as well as Mr. Accurso (Doc. No. 92). For the reasons outlined below, the Court will

---

[1]   The three corporate defendants established by Mr. Land and Ms. Strein consist of Infra-Red Services, Inc., founded in 1992, Roofing Dynamics, Inc., founded in 2006, and Roofing Dynamics Group, LLC., founded in 2011 (collectively, the "Corporate Defendants.")

[2]   As this memorandum is drafted for the benefit of the parties, the Court assumes the reader's familiarity with the factual background of this case. A more complete recitation of the factual background of this case is set out in *Accurso,* 119 F. Supp. 3d at 318-320.

1

grant the Defendants' *in limine* motions in part and deny them in part.  The Court will also grant Mr. Accurso's *in limine* motions in part and deny them in part.

**I.   Defendants' *In Limine* Motions (Doc No. 91)**

The Defendants' briefing raises six separate *in limine* motions challenging evidence relevant to both the claims brought by Mr. Accurso as well as the Defendants' own counterclaims against Mr. Accurso.

**A.  Motion to Exclude Plaintiff's Damages Evidence**

The Defendants first assert that Mr. Accurso should be prevented from presenting any evidence of his damages because he "has not responded to interrogatories or deposition questions or any disclosure requirement of this court as to his claimed damages."  *See* Doc. No. 91 at 1. This motion is made without reference to any legal authority or factual support in the record.

Federal Rule of Civil Procedure 37(c) provides that a party who has failed to disclose information required under Rule 26(a) will not be allowed to rely upon that information at trial unless the failure is substantially justified or harmless.  The burden, however, falls on the moving party to establish that exclusion is the most appropriate remedy.  *Dychalo v. Copperloy Corp.*, 78 F.R.D. 146, 148 (E.D. Pa.) aff'd sub nom. *Copperloy Corp. v. Congoleum Indus., Inc.*, 588 F.2d 819 (3d Cir. 1978) and aff'd sub nom. *Dychala v. Copperloy Corp.*, 588 F.2d 820 (3d Cir. 1978) (citing *Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96 (3d Cir. 1977)).  Exclusion is an extreme sanction and a district court's discretion to exclude evidence is not unlimited.  The Third Circuit Court of Appeals has articulated a set of five factors that should be considered when evaluating the exclusion of evidence.  *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir.1977).  Those factors are (1) "the prejudice or surprise in fact of the party against whom the excluded

witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence. *ZF Meritor*, 696 F.3d at 298 (citing *Pennypack*, 559 F.2d at 904-05).

The Defendants here have not come close to meeting their burden. They have not identified which interrogatories or deposition questions Mr. Accurso has failed to answer. They have failed to provide any argument or explanation as to the nature and extent of the prejudice they would suffer should the Court admit the evidence. They have not articulated any potential for disruption of the case or made any allegations of bad faith on Mr. Accurso's part. Moreover, based upon the record citations provided by Mr. Accurso in response to the defense motion, it appears that many of the Defendants' general characterizations of the factual record are incorrect. *See* Doc. No. 102 at 2. In his briefing, Mr. Accurso identifies an interrogatory response which explains his alleged damages. He also identifies to two exhibits from the deposition of Defendant Brian Land which detail certain deposits to Roofing Dynamics Inc. and Roofing Dynamics Group's bank accounts, which Mr. Accurso contends encompass his damages. *See* Doc. No. 102 at 3. Consequently, the record indicates that the Defendants are aware of the substance of Mr. Accurso's alleged damages.

On the record before the Court, there is no basis to conclude that the Defendants would suffer any prejudice should the Court allow Plaintiff to present evidence of his alleged damages at trial. Therefore, the Defendants' motion to exclude damages evidence will be denied.

### B. Motion to Exclude Evidence of Personal Liability of Brian Land and/or Audrey Strein

The Defendants' second motion *in limine* seeks to exclude any evidence which goes to establish Mr. Land or Ms. Strein's personal liability on any of the remaining counts. Again, the Defendants' motion fails to provide any authority or factual support for their position. The only articulated basis for the exclusion of the challenged evidence is the naked assertion that Mr. Accurso failed to identify any evidence in discovery which justifies piercing the corporate veil of Infra-Red Services, Inc., Roofing Dynamics Group, LLC or Roofing Dynamics, Inc.

There are several weaknesses with the Defendants' argument. First and foremost, while the Defendants have characterized this as a motion *in limine*, in actuality it appears to be a motion for summary judgment. The Defendants do not argue that any specific evidence is inadmissible for any articulable reason, but rather that no relevant evidence on this point has been uncovered. If this were the case, the logical remedy would be summary judgment on the unsupported and/or unsupportable claims, not a motion *in limine* to exclude evidence the Defendants assert does not exist. To the extent that the Defendants are substantially seeking summary judgment, however, that effort is not only untimely[3] but grossly deficient in meeting the movant's burden of showing that no genuine issue of material fact exists as to the Plaintiff's ability to pierce the veil of the corporate defendants.

The second problem with this motion is that the ability of Mr. Accurso to establish that Mr. Land and Ms. Strein are personally liable for the counts alleged in the complaint is not premised exclusively on establishing that the corporate defendants acted as Mr. Land or Ms. Strein's alter egos. The Employee Polygraph Protection Act ("EPPA"), which is the statute that forms the basis of much of the remaining claims at issue, defines an employer as including "any

---

[3] As per the Court's June 27, 2014 Scheduling Order, any motion for summary judgment was due to be filed and served on December 19, 2014, some 15 months ago. Doc. No. 26.

4

person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." 29 U.S.C. § 2001 (West). Likewise, "employer" as defined under the Pennsylvania Wage Payment and Collection Law—the other pertinent statute—"[i]ncludes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 Pa. Stat. Ann. § 260.2a (West). As it is undisputed that both Mr. Land and Ms. Strein were working on behalf of, or as agents of, the corporate defendants, they would be included within these definitions and subject to personal liability for violations of either statute.[4]

Finally, despite the Defendants' assertions to the contrary, the record does appear to include evidence that can support veil-piercing. The courts in Pennsylvania look at the following factors to determine whether a corporation is being operated as an alter ego of an individual defendant: "(1) undercapitalization; (2) failure to adhere to corporate formalities; (3) substantial intermingling of corporate and personal affairs, and (4) use of the corporate form to perpetrate a fraud." *Lomas v. Kravitz*, -- A.3d----, 2015 PA Super 267, 2015, WL 9304279, at *14 (Pa. Super. Dec. 21, 2015). While Defendants do not address these factors in their motion, in his response Mr. Accurso points to evidence in the record indicating that the corporate defendants were controlled entirely by Mr. Land and Ms. Strein, corporate formalities of these entities were not observed, corporate meetings were not held, minutes were not kept, capital contributions were not made, dividends were not paid, and bylaws were not generated. *See* Doc. No. 102 at 6-7. All of this evidence would indicate veil-piercing could be justified. The Defendants have not

---

[4] The breach of contract claim as to Mr. Land and Ms. Strein was initially dismissed without prejudice on the pleadings because the Court found that no facts were plead in support of the breach of contract claim against either of them. *See Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 511 (E.D. Pa. 2014). Mr. Accurso subsequently sought, and was granted, leave to file a second amended complaint. *See* Doc. Nos. 28 & 35.

5

provided any basis for concluding that this evidence is inadmissible to show Mr. Land or Ms. Strein operated the corporate defendants as mere "alter egos" and would therefore be personally liable for the actions of the corporations. The Defendants' characterization of the record appears inaccurate.[5]

Therefore, for all these reasons, the defense motion *in limine* to exclude evidence as to Mr. Land and Ms. Strein's personal liability is denied.

### C. Motion for a Negative Inference as to Defendants' Counterclaims Based upon Plaintiff's Spoliation of Evidence

The third defense motion *in limine* relates to Defendants' counterclaims. They argue that the Court should draw a negative inference regarding the contents of emails Mr. Accurso is alleged to have deleted. The Defendants assert that these emails were exchanged between Mr. Accurso and certain customers of the Defendants with the intention of syphoning business away from the Defendants. The Defendants assert that Mr. Accurso had sole control over the Defendants' electronic records prior to 2011 and that after his termination in January 2012 he "apparently" deleted all of his personal emails.

An adverse inference is an extreme remedy for the alleged spoliation of evidence. *McAdams v. United States*, 297 F. App'x 183, 187 (3d Cir. 2008). The most recent iteration of the Federal Rules of Civil Procedure specifically addresses the applicability of sanctions for spoliation of electronically stored information.[6] Under Rule 37(e), "if electronically stored

---

[5] The Court's opinion here makes no findings of fact regarding whether piercing the corporate veil is appropriate, much less whether the theory would be successful. The Court simply notes that, contrary to the Defendants' assertions, some evidence appears to exist in the record which would support a finding that the corporate defendants acted as alter egos of Mr. Land or Ms. Strein.

[6] The text of subdivision (e) of Rule 37 became effective December 1, 2015. On April 29, 2015 the Supreme Court, pursuant to 28 U.S.C. § 2072, submitted to Congress amendments to the Federal Rules of Civil Procedure. The Court ordered that these amendments would be applicable to all proceedings commenced on or after December 1, 2015, and all proceedings then pending "insofar as just and practicable." The parties' motions *in limine* were filed on August 17, 2015 and were therefore pending resolution on December 1, 2015 when the new rules came into effect. Neither party has addressed the applicability of these amendments in their

information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the Court has the authority to enter an order to cure any prejudice that may be shown against a party entitled to that electronically stored information. The new rule, however, makes explicit that an adverse inference is appropriate *only* on a finding that the party responsible for the destruction of the lost information *acted with the intent* to deprive another party of access to the relevant information  *See* Rule 37(e)(2)(A).

Here, the Defendants have not provided any basis for the Court to conclude that there was actual suppression or destruction of evidence, let alone that Mr. Accurso was responsible for the suppression or destruction of this evidence, that this evidence cannot be obtained from other sources, or that Mr. Accurso acted with the intent to deprive the Defendants of access to the information. Thus, under Rule 37(e), the Defendants have not shown that they are entitled to an adverse inference and their motion will be denied without prejudice--the Defendants are free to raise this argument again at trial in light of what is received into evidence.

### D. Motion to Accept Evidence of Mixed Motive Framework for EPPA Liability

Defendants' fourth motion *in limine* requests they be allowed to present evidence at trial showing that Mr. Accurso's termination was unrelated to his performance on the 2010 polygraph examination. They have not, however, identified specific exhibits or testimony that they are seeking to introduce under this theory. Rather, they appear simply to be arguing that any

---

briefing. The Court, however, finds that the amendment to Rule 37(e) is procedural in nature and that it is just and practicable to apply this rule, as amended, to the Defendants' request for sanctions against Mr. Accurso. *See CAT3, LLC v. Black Lineage, Inc.,* No. 14-CV-5511-AT-JCF, 2016 WL 154116, at *5 (S.D.N.Y. Jan. 12, 2016); *Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-CV-02464-JWL-TJJ, 2016 WL 492743, at *4 (D. Kan. Feb. 8, 2016). Moreover, this rule change does not appear to have substantively altered the moving party's burden, in this Circuit, of showing that ESI was destroyed in "bad faith" when requesting an adverse inference. *See Mead v. Travelers Indem. Co. of Connecticut*, 71 F. Supp. 3d 516, 518 (E.D. Pa. 2014) (citing *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 79 (3d Cir. 2012) ("A finding of bad faith is pivotal to a spoliation determination.")

evidence regarding the Defendants' motivation in terminating Mr. Accurso is relevant to consideration of the EPPA count, and therefore admissible at trial.

The Defendants rely on the Supreme Court's "mixed motive" analysis from *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).  The Court in *Price Waterhouse* held that, if a plaintiff in an employment discrimination context "show[s] by direct evidence that an illegitimate criterion was a substantial factor in the decision" to take an adverse employment action, the burden of persuasion shifts to the employer to show that the decision would have been the same absent the discrimination.  *See id.* at 267 (O'Conner, J. concurring).

In support of their argument that a mixed motive analysis should apply to the jury's consideration of the EPPA claims, the Defendants point to the Fourth Circuit Court of Appeals decision in *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334 (4th Cir. 2008).  Here Mr. Worden, a former employee of the defendant bank, brought a claim alleging that his termination violated the EPPA because he was fired based upon the results of two failed polygraph tests.  Prior to being fired, Mr. Worden had been suspected of involvement in an attempted robbery of the bank. In the course of the police investigation, Mr. Worden agreed to take two separate polygraph examinations, both of which he failed.  He was then fired and thereafter sued the bank.  The district court held that the bank was entitled to summary judgment, declining to hold the bank liable for "mere knowledge" of the lie detector results.  *Id.* at 339.   The district court reasoned that the bank did not "use" the polygraph results under § 2002 when those results "were not the sole or determinative factor in the discharge decision." *Id.*

The Fourth Circuit Court of Appeals upheld the grant of summary judgment but rejected an interpretation of § 2002(3) which would require a showing that the results of the polygraph was the "sole factor" in the adverse employment decision. *Id.* at 341.  The Court explained that,

in order to make a prima facie showing of liability under the EPPA, a plaintiff is only required to show that the results of the polygraph were a factor in the adverse decision. *Id.* Applying a "mixed motives" analysis, the Court of Appeals held that a defendant can rebut this evidence by establishing that the adverse employment action would have been taken independent of the results of the polygraph. *Id.* at 343.  In *Worden,* the Court found, however, that the record contained overwhelming evidence which supported the conclusion that the bank would have discharged Mr. Worden regardless of the results of the polygraph tests. *Id.*

The parties here have not identified, and the Court has been otherwise unsuccessful in finding Third Circuit authority applying the mixed motives analysis in the context of an EPPA claim. Nevertheless, the mixed motives analysis has been employed by our Court of Appeals in the context of other types of employment discrimination claims. *See e.g., Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008) (noting application of a mix-motive theory in the context of a Title VII claim); *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1113 (3d Cir. 1997) (analyzing an ADEA claim under the mixed motives analysis).  Moreover, it appears the parties agree that evidence of the Defendants' reasons for terminating Mr. Accurso is relevant to the EPPA claim. The Defendants' liability under 29 U.S.C. § 2002 is predicated in part on establishing that Mr. Accurso was "discharged, disciplined, or discriminated against" "on the basis of the results of a lie detector test."  Section 2002(3)(B).  Evidence which tends to show that Mr. Accurso was terminated on the basis of conduct unrelated to the results of the alleged lie detector test would be relevant for evaluating his claim.  Mr. Accurso does not argue that a defendant's motivation in terminating an employee is irrelevant or inadmissible in the context of an EPPA claim.  In fact, he acknowledges that "the employer should be able to present some objective evidence as to this

9

probable decision in the absence of an impermissible motive." *See* Doc. No. 102 at 21 (citing *Price Waterhouse,* 490 U.S. 228, 252 (1989)).[7]

As with the rest of the Defendants' motions, however, the Court is hampered in ruling on the admissibility of evidence which has not been identified or described in any detail. As noted elsewhere, neither side has identified any specific exhibits purportedly relevant to the Defendants' motivations or made any specific objections to the admissibility of such evidence. Consequently, the Court will not rule any such evidence is admissible (or inadmissible) in the abstract. Rather, the Court will deny the Defendants' motion without prejudice. At trial the Defendants may offer evidence describing the reasons why they choose to terminate Mr. Accurso, and, of course, Mr. Accurso may raise any appropriate objections.

### E. Motion to Accept Application of the Faithless Servant Doctrine

The fifth defense motion *in limine* requests the Court accept evidence of the "faithless servant doctrine", which the Defendants have pleaded as an affirmative defense to the Pennsylvania Wage Payment and Collection Act Claims. *See* Doc. No. 43 at ¶ 107.

Defendants argue that under New York law, a faithless or disloyal employee forfeits his right to compensation for services performed during the period of his disloyalty. *Visual Arts Found., Inc. v. Egnasko*, 91 A.D.3d 578, 579, 939 N.Y.S.2d 13, 14 (2012); *In re Blumenthal*, 32 A.D.3d 767, 768, 822 N.Y.S.2d 27, 28 (2006). Acknowledging that this doctrine is not recognized under Pennsylvania law, Defendants argue that "Pennsylvania law is in accord" with the principles expressed in New York case law applying the faithless servant doctrine. However, they do not provide any authority or explanation in support of their argument that the New York law cited in their briefing is at all applicable to determining the law as it exists in Pennsylvania.

---

[7] The substance of Mr. Accurso's response to the Defendants' motion to admit evidence of mixed motives focuses on arguing the veracity of the underlying facts of his termination. Such arguments are not relevant to the Court's analysis here.

Mr. Accurso argues that the faithless servant doctrine has not been adopted in Pennsylvania. He cites to *Fidelity Fund, Inc., v. DiSanto*, in which the Superior Court of Pennsylvania stated that "equity . . . abhors forfeiture and is greatly hesitant to enforce one." 347 Pa. Super. 112, 126, 500 A.2d 431, 439 (Pa. Super. 1985). Here a defendant employee had been employed by the plaintiff, Fidelity Fund. Fidelity was engaged in the insurance brokerage business. After some time, the defendant left and began working for a direct competitor of Fidelity. While he was still working for Fidelity, it was alleged that the defendant employee violated his fiduciary duties by designating himself and his new employer as the listed broker on several insurance policies. The court held that the defendant employee forfeited his commissions as to these specific policies. While the court examined Restatement (Second) of Agency § 469[8], which describes the principle of forfeiture under agency law, the court cautioned that "[w]e look to § 469 for guidance only. We are not hereby adopting that section in its entirety as the law of this Commonwealth." *Id.* at 126, n.4. Ultimately, the court's holding relied on a finding that the former employee's conduct violated the terms of his prior employment agreement, rather than a breach of fiduciary duty or general principles of equity or agency. Fidelity Fund's recovery was limited to the specific commissions on policies which involved violations of the employment agreement. The court found that the plaintiff could not recover the entirety of the defendant's compensation for the period of his faithless behavior, upon a breach of fiduciary duty theory. *Id.* at 128.

In the absence of any cited authority in Pennsylvania adopting the faithless servant doctrine, the Court concludes that the Defendants have failed to articulate an applicable

---

[8] This section states in relevant part states that "[a]n agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a willful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned." *See id.* at 126, n.3 (citing *Spring Steels, Inc. v. Molloy*, 400 Pa. 354, 363, 162 A.2d 370, 375 (1960)).

11

affirmative defense that is recognized under Pennsylvania law. The Defendants' motion to accept argument or evidence as to the faithless servant doctrine will be denied.

### F. Privileged Materials

Lastly, the Defendants move to prevent the admission of any inadvertently produced, privileged documents. The Plaintiff does not challenge this motion. The Court will therefore grant the Defendants' motion to exclude inadvertently produced, privileged documents, recognizing, of course, that either party will need to raise this issue at trial if their opponent seeks to introduce any such material.

## II. Plaintiff's *In Limine* Motions (Doc. No. 92)

Mr. Accurso has raised two related motions *in limine*.

### A. Motion to Exclude the "Lay Opinion" of Brian Land

Mr. Accurso argues first that the Defendants should be prevented from offering Brian Land's "lay opinion" regarding the Defendants' damages at trial. Mr. Accurso characterizes Mr. Land's opinions as "bald-faced attempts to improperly inject [his] personal opinions regarding pertinent legal issues, the credibility of other witness, and the ultimate issue to be decided by the jury." Doc. No. 92.

Under Federal Rule of Evidence 701, a witness is permitted to offer testimony in the form of an opinion which is rationally based upon the witness's perception, helpful to understanding the testimony or determination of a fact issue, and not based on scientific, technical or other specialized knowledge. The Third Circuit Court of Appeals has recognized that "[t]he modern trend favors the admission of [lay] opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993); *accord Ghee v. Marten Transp., Ltd.*, 570 F.

App'x 228, 231 (3d Cir. 2014). In *Lightning Lube*, for example, the Third Circuit allowed a company's founder and owner to provide his lay opinion regarding his company's lost future profits and harm to the value of his business stemming from the defendant's conduct. *Id.* The court allowed the founder to present this testimony as to potential future profits despite the arguably specialized nature of the testimony, as the court found the witness had extensive personal knowledge and in-depth experience with the company's contracts, operating costs and competition. *See Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009) (identifying cases applying similar rationale). This rationale was specifically acknowledged in the Advisory Committee's notes to the 2000 amendments to Federal Rule of Evidence 701.

Here, the proposed testimony regarding the Defendants' damages is analogous to the evidence which was admitted in *Lighting Lube*. Mr. Land proposes to testify regarding the value of work Mr. Accurso is alleged to have improperly solicited or interfered with. This testimony is based on Mr. Land's personal perception and will be susceptible to cross examination. As noted in his report, Mr. Land has over 35 years' experience in the roofing industry, which includes experience setting pricing and collecting amounts due for roofing consulting services. Moreover, testimony in this form could be helpful to the jury and is not based upon scientific or specialized knowledge. Therefore, the Court finds that Mr. Land should be permitted to testify regarding the Defendants' alleged damages.

That said, Mr. Land's proposed opinions, as articulated in the report attached to the Plaintiff's motion, are not limited to a simple recitation of damages figures. His report also presumes to include certain other matters which would exceed the bounds of Rule 701. For example, Mr. Land has not been qualified as an expert under Rule 702 and will not be permitted to testify regarding matters of which he has no personal knowledge. Mr. Land will not be

permitted to testify to his opinion that Mr. Accurso intentionally destroyed evidence. As noted above in the context of the Defendants' motion *in limine* seeking a negative inference regarding the alleged destruction of evidence, the parties have not provided any basis beyond mere speculation to conclude that evidence was in fact destroyed by Mr. Accurso. Mr. Land's speculation on such issues would not be any help to the fact finder in this case. Mr. Land will also not be permitted to offer his opinion that Mr. Accurso's solicitation of business constituted tortious interference or was otherwise legally improper.

### B. Motion to Exclude Damages Evidence

Mr. Accurso also argues the Defendants should be prevented from presenting any evidence as to damages involving their counterclaims due to their failure to respond to interrogatories or deposition questions during discovery. This tit-for-tat argument is essentially identical to the argument made by the Defendants in their motion *in limine* seeking exclusion of damages evidence, which is discussed above. Here, like the Defendants in their motion, Mr. Accurso has pointed to no specific interrogatory responses or deposition questions the Defendants are alleged to have ignored or not responded to. Moreover, similar to the Defendants' motion, Mr. Accurso's assertion that the Defendants have failed to put forward evidence of their damages is belied by Mr. Land's proposed lay opinion testimony. Consequently, Mr. Accurso's motion will be denied for the same reasons as outlined above. *See* Section I.A. *supra*.

### III. Conclusion

For the reasons discussed, the Defendants' motion *in limine* regarding privileged evidence is granted. The Defendants' other motions *in limine* are denied. The Plaintiff's motion

*in limine* to prevent the admission of Mr. Land's lay testimony is granted in part and denied in part. The Plaintiff's motion *in limine* regarding damages is denied.

*   *   *

An order reflecting the above will follow.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge