IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PETER ACCURSO,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **INFRA-RED SERVICES, INC., et al.,** | : | **NO. 13-7509** |
| *Defendants*. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                                      APRIL 1, 2016

In anticipation of trial in this matter, which is currently scheduled to commence today, the defendants filed a second set of motions *in limine* requesting the exclusion of certain testimony and documents identified by Mr. Accurso in his pretrial filings. Specifically, the defendants are moving for the exclusion of three categories of evidence. First, they seek the exclusion of evidence regarding Mr. Accurso's "pain and suffering," including the testimony and curriculum vitae of Dr. Victor J. Navarro. Second, the defendants move for the exclusion of certain documents submitted to the plaintiff by the defendants in the context of settlement discussions. And finally, the defendants move to exclude evidence of Mr. Accurso's health care benefits. For the reasons outlined below, the Court will grant the defendants' motion to exclude evidence of Mr. Accurso's pain and suffering as well as evidence of his health care benefits generally. In addition, as to the defendants' motion to exclude documents submitted in the context of settlement negotiations, the Court will grant the motion in part and deny it in part.

**I.   Motion to Exclude Plaintiff's Evidence of Pain and Suffering**

The first motion *in limine* by the defendants seeks to exclude evidence regarding the pain and suffering Mr. Accurso alleges he experienced as a result of the termination of his

1

employment. Specifically, the defendants anticipate that the plaintiff will seek to introduce testimony from Dr. Navarro regarding Mr. Accurso's diagnosis of Non-Hodgkin's Lymphoma as well as certain bloodwork that demonstrates a decline in his health. This episode occurred at least five months after his termination by the defendants and was allegedly the result of Mr. Accurso's failure to pay for his health insurance. Mr. Accurso is claiming $1,000,000 in "intangible damages" he suffered "with respect to the deterioration of his physical condition and resultant physical harm, as well as the psychological/ emotional distress he experienced." *See* Doc. No. 120-2 at 3. The defendants argue that, as a matter of law, the plaintiff cannot recover for such damages. They assert that the Pennsylvania Wage Payment and Collection Law and the Employee Polygraph Protection Act only allow recovery of reasonably calculable economic damages. They also argue that the plaintiff cannot recover for pain and suffering damages under a breach of contract theory. *See Crumm v. K. Murphy & Co. Inc.,* 10 Pa. D. & C.5th 268, 280 (Pa. Com. Pl. Sept. 16, 2009).

Mr. Accurso's response focuses on his claims under the Employee Polygraph Protection Act ("EPPA") and his breach of contract claim. Mr. Accurso does not attempt to argue that damages for pain and suffering are recoverable under the Pennsylvania Wage Payment and Collection Law and so the Court will focus on just the EPPA and contract issues. Mr. Accurso asserts that, under the EPPA, an employer who violates the Act "shall be liable for such legal or equitable relief as may be appropriate, including, *but not limited to*, employment, reinstatement, promotion, and the payment of lost wages and benefits." 29 U.S.C. § 2005(c) (emphasis added). While the list of recoverable damages in the statute only encompasses economic damages, the statute expressly notes that the list is not exclusive and that an employee may recover equitable relief in addition to money damages. *See Lyles v. Flagship Resort Development Corp.,* 371 F.

Supp. 2d 597, 609 (D.N.J. 2005).  On this basis, Mr. Accurso contends that his damages resulting from his lack of health insurance, which resulted in turn from the alleged wrongful termination under the EPPA, are recoverable under the Act.

While the plaintiff is correct in asserting that the Act contemplates recovery of more than simply lost wages, the Court does not find that the specific damages described in the papers are recoverable.  The District of New Jersey's decision in *Lyles* is instructive.  In *Lyles*, the court held that the Act allows for the recovery of non-economic emotional distress damages. *Id.* at 607.[1]  The court's analysis, however, expressly linked these types of damages to the wrongfulness of the conduct prohibited by the Act itself.  The court reasoned that, in addition to protecting the wage and employment status of an employee, the Act was designed to protect the privacy rights of employees as well; "the offensiveness of employers' use of polygraph examinations in making employment decisions stems both from the intrusiveness of the tests themselves, in addition to any adverse employment actions taken as a result of the tests." *Id.* at 608 (citing 29 U.S.C. § 2002(2)).  The award of non-economic emotional damages was justified based upon the court's conclusion that back pay alone would be insufficient to compensate the plaintiff for the invasion of his protected privacy interest.  The court also noted that the damages recoverable must be "proximately caused" by the defendant's conduct. *Id.* at 606, n.4. For example, the plaintiff was not permitted to recover damages associated with her incarceration

---

[1] It should be noted that while the court recognized that emotional damages are recoverable under the EPPA, the court nevertheless granted the motion for a new trial, in part based upon the excessive amount of non-economic emotional distress damages awarded to the plaintiffs.  At the conclusion of a two week jury trial, the defendant in *Lyles* was found to have violated the Employee Polygraph Protection Act by firing three employees based upon the results of certain polygraph tests.  In addition to lost wages, the jury awarded the three plaintiffs a total of $2.98 million in punitive damages and a total of $600,000 in non-economic damages. *Id.* at 604.  This the court found excessive.  The court only found one previous case where emotional damages were awarded under the Act, and these damages amounted to only $15,000.  *See Mennen v. Easter Stores*, 951 F. Supp. 838 (N.D. Iowa 1997).

after she resorted to smoking marijuana in order to self-medicate her chemotherapy-induced nausea, after losing her job. *Id.*

The decision in *Lyles* also cites to *Mennen v. Easter Stores*. The court here also emphasized the link between the damages and the character of the wrongful conduct. In *Mennen*, a store employee had been suspected of theft at work and was subjected to a polygraph test by his employer. When he failed the polygraph test, he was demoted. He claimed emotional damages based upon his humiliation associated with this demotion due to the fact that he had worked for the defendant store for thirteen years and felt a deep loyalty to his employer. The evidence presented at trial regarding his emotional distress was linked to the misuse of the polygraph which caused his humiliation and loss of reputation among his co-workers. *Mennen*, 951 F. Supp.at 864-65. The court's analysis focused heavily on the volume of evidence showing both the plaintiff's actual damages as a result of emotional distress, as well as the link between the distress and the wrongful invasion of the plaintiff's privacy, which the Act was intended to protect. *Id.* at 865.

Here the Court finds that the defendants' alleged violations of the Act are not the proximate cause of the alleged non-economic pain and suffering damages that Mr. Accurso is attempting to recover and that these damages are not of the type for which the Act contemplates recovery. As has been represented to the Court, Mr. Accurso alleges that he suffered a decline in his health following his termination due to his inability to pay for his private health insurance. Unlike the plaintiffs in *Lyles* and *Mennen*, however, Mr. Accurso's pain and suffering is not alleged to be the consequence of the wrongfulness of the defendants' invasion of his protected privacy interest. Unlike in *Mennen*, where the court found that the plaintiff could recover for humiliation resulting from his employer's violation of the EPPA, which led to his depression,

Mr. Accurso is not alleging he suffered emotional distress as a result of having his integrity questioned or privacy invaded.  *See* 951 F. Supp. at 865.  Rather, the alleged damages are the consequence of his reduced income.[2]  While the Court understands that Mr. Accurso may have suffered as a result of his health condition, he has not pointed to any authority to allow the Court to conclude that the Act was intended to speak to or encompass an employee's understandably difficult choices as to how to spend his reduced financial resources in context of his interest in maintaining his health or private insurance coverage.  Moreover, we find that damages resulting from Mr. Accurso's failure to pay for his private health insurance, five months after his termination, are too attenuated from the wrongfulness of the defendants' alleged conduct to allow the Court to conclude that the defendants' behavior was the proximate cause of his injuries.

The Court finds Mr. Accurso's arguments regarding the recoverability of pain and suffering damages under a contract theory similarly unsuccessful.  Mr. Accurso cites to two Pennsylvania state court decisions, both of which emphasize that damages for personal injury are *not* recoverable based upon breach of contract.  *See Crumm,* 10 Pa. D. & C.5th at 280 ("Generally speaking, damages for personal injuries, including pain and suffering, are not recoverable in a breach of contract action."); *Mason v. Western Pennsylvania Hosp.*, 499 Pa. 484, 494 (Pa. 1982) (Nix, J., concurring and dissenting) ("[C]ontract damages awardable in this state do not include damages for mental suffering.").  Mr. Accurso is correct that "consequential damages can be appropriate in a breach of contract case" when such damages would "naturally and ordinarily result from the breach, or the damages were reasonably foreseeable and within the

---

[2] Mr. Accurso does not appear to allege that his loss of health insurance itself constituted recoverable lost wages or benefits.  The plaintiff had secured his own private insurance that he paid for with his income from working with the defendants.  When he was terminated, he alleges that he was no longer able to pay for his health insurance premiums, and that this in turn resulted in a decline in his health.

5

contemplation of the parties at the time of the contract and can be proved with reasonable certainty." *Crumm*, 10 Pa. D. & C.5th at 279.  But Mr. Accurso has not attempted to articulate how the deterioration of his health was foreseeable and within the contemplation of the parties at the time the contract was negotiated.  For example, the plaintiff has not pointed to any language in the contracting documents or evidence of discussion among the parties indicating that anyone contemplated such damages.  *Id.* at 280.  Having failed to provide any basis to conclude that the alleged damages were foreseeable or contemplated when the contract was entered into, the Court cannot find that Mr. Accurso can recover for pain and suffering as a result of a breach of contract.

The Court ultimately holds that under either the EPPA or a contract theory, Mr. Accurso cannot recover for the decline in his health resulting from his alleged inability to pay for his private health insurance.  For this reason, evidence of Mr. Accurso's pain and suffering as well as evidence regarding his health care generally does not have a tendency to make any fact of consequence to the determination of his action more or less probable.  *See* Fed. R. Evid. 401.  The Court therefore grants the defendants' motion as to this category of evidence.

**II.     Motion to Exclude Documents Submitted in the Context of Settlement Discussions**

The defendants also move to exclude certain documents which were exchanged between the parties in the course of settlement negotiations.  The documents at issue consist of the following: (1) a handwritten letter from Brian Land to  Peter Accurso, sent just prior to the January 4, 2012 termination letter (marked as exhibit "P-70"); (2) a letter from Richard Berlinger, counsel for the defendants, addressed to Grace Deon, counsel for the plaintiff, sent on January 27, 2012 (P-108); (3) a declaration by Ms. Strein as to her current net worth, dated November 25, 2015 (P-148); and (4) certain invoices, bank statements and IRS Form 1040s for

6

the individual defendants (P-148, P-150 P-151, P-152 P-153, P-154, P-155, P-156, P-157).  The defendant argues that these documents, and any testimony about them, constitute conduct or statements made during compromise negotiations about the claim and are therefore inadmissible to either prove the validity of the disputed claims or impeach prior inconsistent statements of the defendants.

Federal Rule of Evidence 408 provides that evidence of a party's "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to comprise the claim" as well as "conduct or a statements made during compromise negotiations about the claim" is not admissible to either "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  "The facts of each case bear upon the trial court's exercise of discretion to apply the exclusion" but courts have held that it is "better practice for courts to err on the side of excluding evidence related to compromise negotiations." *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 528 (3d Cir. 1995) (citing *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir.1987)).  The advisory committee note to the Rule makes clear, however, that "the Rule cannot be read to protect pre-existing information simply because it was presented to the adversary in compromise negotiations."  Fed. R. Evid. 408, Advisory Committee Notes (citing *Ramada Development Co. v. Rauch*, 644 F.2d 1097, 1107 (5th Cir. 1981) (noting the exception did not apply to a report which "would not have existed but for the negotiations")).

### 1. Letter from Mr. Land to Mr. Accurso (P-70)

The first exhibit challenged by the defendants is an undated, handwritten letter sent by Mr. Land to Mr. Accurso.[3] The defendants characterize this letter as an "effort by Mr. Land to

---

[3] In their motion, while not presenting any foundational support one way or the other, the defendants state that the letter "may not have been sent to the Plaintiff at all."  This assertion is not addressed by the plaintiff in his

compromise with Mr. Accurso concerning their disputes just prior to January 4, 2012." The January 4 date is relevant as this was the alleged date on which the defendants terminated Mr. Accurso's employment. In the course of this letter, Mr. Land references his past disputes with Mr. Accurso—specifically referencing allegations of theft and lying by Mr. Accurso—and proposes a termination of their business relationship wherein Mr. Accurso would be provided with some share of net profits from certain accounts, a stipend, and the ability to keep customer contacts. In exchange, under the terms outlined in the letter, Mr. Accurso would not contact any current Roofing Dynamics lead, contact any lead on a specified list, or respond to any inquiries from current Roofing Dynamics customers.

In his response to the motion, Mr. Accurso disputes the defendants' characterization of this letter as a settlement offer. He specifically references as support for his contention a passage in the letter wherein Mr. Land states that there will be "no negotiating" as to the terms offered. In light of this, Mr. Accurso asserts that the letter is more appropriately characterized as a "series of directives and threats."

While one may certainly debate the effectiveness of the hostile tone Mr. Land chooses to employ—after all one does catch more flies with honey—it is nevertheless apparent that the letter itself constitutes an offer to resolve the parties' dispute. Under the principles governing the formulation of a contract, that an offer is made on a "take it or leave it" basis does not make it any less of an offer. *See Kingsbury, Inc. v. GE Power Conversion UK, Ltd.*, 78 F. Supp. 3d 611, 619 (E.D. Pa. 2014), *appeal dismissed* (Dec. 15, 2015) ("[T]he Superior Court of Pennsylvania has defined an offer as 'a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude

---

response. For purposes of the analysis, the Court will presume that the letter was sent to Mr. Accurso by Mr. Land prior to January 4, 2012.

it.'"); *Great N. Ins. Co. v. ADT Sec. Servs., Inc.*, 517 F. Supp. 2d 723, 737 (W.D. Pa. 2007) (holding that a unilateral contract, under Pennsylvania law, is a contract were one party makes a promise in exchange for the other party's act or performance).  Despite its abrasiveness, the letter clearly offers a resolution of the parties' dispute in exchange for certain specified action on the part of Mr. Accurso.  Contrary to the plaintiff's characterization, Rule 408 does not require a back-and-forth exchange of proposals—rather the Rule protects the *offer* to settle.  The plaintiff has not provided any basis or argument as to why Rule 408's protection should not be extended to Mr. Land's unilateral offer to resolve the matter.[4]  As the Court finds the letter an offer to settle the parties' dispute, we will grant the defendants' motion to exclude plaintiff's exhibit P-70.

### 2. Letter from Mr. Berlinger to Ms. Deon (P-108)

The defendants next challenge the admissibility of a letter drafted by Mr. Berlinger, counsel for the defendants, and addressed to Ms. Deon, counsel for the plaintiff.  The defendants claim that this letter was also sent in the context of a settlement negotiation and should therefore be excluded.  This characterization, however, is belied by the contents of the letter itself.  In the letter, Mr. Berlinger clearly states that he believes "it is premature to discuss a resolution as we do not have all of the facts which will be elicited in discovery, assuming litigation is required."  Moreover, in closing, Mr. Berlinger notes the defendants may be open to the possibility of future settlement discussions.  This reference to the possibility of future settlement discussions implies

---

[4] While Mr. Accurso does not raise the issue of when the letter was sent relative to the initiation of this lawsuit, the Court notes that the protections of Rule 408 have been extended to negotiations which take place prior to a suit being filed.  *See Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 526 (3d Cir. 1995) (citing *Alpex Computer Corp. v. Nintendo Co.*, 770 F. Supp. 161, 164 (S.D.N.Y. 1991)).  In order for Rule 408's protections to apply, the Third Circuit Court of Appeals in *Affiliated Manufacturers* held that a litigation need not have been commenced, but rather it must be shown that a dispute existed between the parties.  *See Affiliated Mfrs.*, 56 F.3d at 528 ("[The] meaning of 'dispute' as employed in the rule includes both litigation and less formal stages of a dispute.").  The letter from Mr. Land clearly indicates the matters at issue in this litigation—the terms of Mr. Accurso's termination, allegations of theft, and the use of polygraph tests—were disputed by the parties at the time that Mr. Land drafted his letter to Mr. Accurso.

his subjective belief that the letter itself is not a component part of such discussions. For this reason, the Court denies the defendants' motion as to P-108.

### 3. Declaration of Ms. Strein (P-142)

Next, the defendants challenge the admissibility of the declaration of Ms. Strein. This declaration, along with certain invoices, bank statements and form 1040's, were, at the direction of the Court, submitted to the plaintiff in the course of negotiations following defense counsel's representation to the Court that the defendants were insolvent. *See* Doc. No. 97. The plaintiff, for his part, does not directly argue that the statement itself is admissible but rather asks that he be allowed to inquire at trial as to the basis of Ms. Strein's assertions that the defendants are insolvent.

The Court finds that the declaration of Ms. Strein is a statement made during compromise negotiations about a claim. There appears to be no dispute that this statement was prepared as a basis for compromise negotiations, in an effort to identify what an appropriate compromise damages figure might be. *See Affiliated Mfrs.*, 56 F.3d at 530. Evidence of this statement is therefore inadmissible to either directly prove or disprove the validity of the claims at issue in this litigation, or to impeach by prior inconsistent statement. *See* Rule 408.

### 4. Financial Documents (P-148, P-150, P-151, P-152, P-153, P-154, P-155, P-156, P-157)

In addition to Ms. Strein's declaration, the defendants also allege that the financial documents referenced by Ms. Strein in her declaration and exchanged with the plaintiff in the course of settlement negotiations are inadmissible under Rule 408. The defendants argue that they are inadmissible because they were submitted in the context of settlement negotiations. The Advisory Comments to Rule 408, however, clearly states that "the Rule cannot be read to protect pre-existing information simply because it was presented to the adversary in compromise

negotiations." Fed. R. Evid. 408, advisory committee notes; *see also Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 300, n.57 (5th Cir. 2010) ("In much the same way that turning documents over to one's lawyer does not automatically cloak those documents in attorney-client privilege, a party cannot protect otherwise admissible information just by synthesizing it in a report used to settle a dispute."). It is not disputed in the briefing that these financial documents existed prior to the negotiations themselves or claimed that they were prepared in anticipation of such negotiations. The simple fact that the documents at issue were exchanged or referenced in the course of settlement negotiations does not cloak them with the protections of Rule 408. For this reason, the Court will deny the defendants' motion to exclude plaintiff's exhibits P-148, P-150, P-151, P-152, P-153, P-154, P-155, P-156, and P-157.

The Court points out, however, that simply because it has denied the motion to exclude these documents under Rule 408, this does not mean that these documents are admissible. The proponent of such evidence is still required to establish foundation and establish their relevance to the claims at trial.

### III. Conclusion

For the reasons outlined above, the Court grants the defendants' motion to exclude evidence of the plaintiff's pain and suffering and evidence of his health care coverage. The Court also grants the defendants' motion to exclude plaintiff's exhibit P-70 and P-142. The Court denies the defendants' motion to exclude plaintiff's exhibits P-108, P-148, P-150, P-151, P-152, P-153, P-154, P-155, P-156, and P-157.

\* \* \*

An order reflecting the above will follow.

BY THE COURT:

>S/Gene E.K. Pratter
>GENE E.K. PRATTER
>United States District Judge