# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PETER ACCURSO,** | : | |
| *Plaintiff & Counterclaim Defendant,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **INFRA-RED SERVICES, INC., et al.,** | : | **No. 13-7509** |
| *Defendants & Counterclaim Plaintiffs.* | : | |

## M E M O R A N D U M

PRATTER, J.                                                          FEBRUARY  15, 2018

Peter Accurso sued his prior employers, Brian Land, Audrey Strein, and their three companies Infra-Red Services, Inc. ("Infra-Red"), Roofing Dynamics Group, LLC ("RDG"), and Roofing Dynamics, Inc. ("Dynamics") (collectively "Defendants") alleging, *inter alia*, that they required him to submit to unlawful polygraph tests prior to wrongfully terminating his employment.   Defendants filed counterclaims, including claiming that Mr. Accurso misappropriated their trade secrets and breached his employment agreement.  The jury's verdict on the competing claims following a six-day trial is described in this Memorandum.  The verdict prompted the parties' post-trial motions which are addressed and resolved here.  For the reasons that follow, the Court denies the motions.

## I.       BACKGROUND

Mr. Accurso brought seven claims against Defendants: (1) violation of the Employee Polygraph Protection Act ("EPPA"), (2) breach of contract, (3) intentional interference with contractual relations, (4) violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), (5) unjust enrichment, (6) intentional infliction of emotional distress, and (7) civil conspiracy.  The unjust enrichment and intentional infliction of emotional distress claims were

dismissed at the pleadings stage. *See* Doc. No. 64. The Court also dismissed the Polygraph Protection claim to the extent it was based on the allegation that Defendants required Mr. Accurso to submit to a 2008 polygraph examination, because this aspect of that claim was time-barred. However, claims based on some subsequent adverse employment action taken against Mr. Accurso allegedly as a result of the 2008 polygraph examination were not deemed time-barred. *See id*. With their answer, Defendants filed counterclaims against Mr. Accurso for (1) breach of contract, (2) breach of fiduciary duty, (3) fraudulent misrepresentation, (4) intentional interference with contractual relations, and (5) misappropriation of trade secrets. The Court later entered summary judgment for Defendants on Mr. Accurso's claim against Mr. Land and Ms. Strein for tortious interference with contract, as well as the Accurso claim for civil conspiracy that was premised on the tortious interference with contract claim. *See* Doc. No. 80. On January 13, 2015, Defendants made an offer of judgment pursuant to F.R.C.P. 68 in the amount of $35,000. *See* Doc. Nos. 166-1, 171-1. Defendants' offer of judgment was not accepted by Mr. Accurso.

After lengthy and acrimonious pre-trial activities, trial ensued. The jury returned a verdict in favor of Mr. Accurso and against all Defendants on his breach of contract claim but then also found that Mr. Accurso had breached the employment agreement as well. Accordingly, the jury found that all Defendants were relieved of their obligation to perform under the agreement due to Mr. Accurso's material breach, but then the jury went on to determine that Mr. Accurso was not relieved of his obligations as a result of the Defendants' breach. The jury awarded Defendants $13,000 in damages on their breach of contract counterclaim. On the Wage Payment and Collection Law claim, the jury determined that Mr. Land, Ms. Strein, RDG, and Dynamics were liable to Mr. Accurso and awarded him $51,400 on that claim. The jury found

that no defendant violated the Polygraph Protection Act. On Defendants' other counterclaims, the jury found that Mr. Accurso breached a fiduciary duty that he owed to Defendants and awarded damages to them in the amount of $37,606, awarded Defendants $1 on their fraudulent misrepresentation claim, $1 on their intentional interference with contractual relations claim, and $63,000 on their misappropriation of trade secrets claim.

The verdict led to dueling post-trial motions. Mr. Accurso filed a motion for attorney fees, liquidated damages, costs and pre-judgment interest, Doc. No. 144, and also filed a motion for judgment as a matter of law or, in the alternative, for a new trial or to alter and amend judgment, Doc. No. 164. Defendants also filed a motion for fees and costs, Doc. No. 166, a motion to alter judgment, Doc. No. 171, and a motion for judgment as a matter of law on the Wage Payment and Collection Law claim, Doc. No. 172.

## II. LEGAL STANDARDS

Both parties ask the Court to enter judgment in their respective favor as a matter of law. The standard of review for a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 is "whether, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Eddy v. Virgin Islands Water & Power Auth.,* 369 F.3d 227, 230 (3d Cir. 2004). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1166 (3d Cir. 1993). The Court may enter judgment as a matter of law following return of a verdict by a jury "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Trabal v.*

*Wells Fargo Armored Serv. Corp.,* 269 F.3d 243, 249 (3d Cir. 2001). The jury's verdict is afforded every consideration.

Rule 59(a) does not specify grounds upon which a Court can grant a new trial and the decision is left to the discretion of the district court. *See Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992). The United States Court of Appeals for the Third Circuit has held that a court should grant a new trial if the verdict is so clearly contrary to the weight of the evidence to create a "miscarriage of justice" if the verdict is allowed to stand. *Williamson v. Conrail*, 926 F.2d 1344, 1346 (3d Cir. 1991). Other common reasons to grant a new trial includes situations where there have been prejudicial errors of law, such as erroneous evidentiary rulings or jury instructions. *See Maylie v. Nat'l R.R. Passenger Corp.*, 791 F. Supp. 477, 480 (E.D. Pa. 1992), *see also* 11 Fed. Prac. & Proc. Civ. § 2805, Grounds for New Trial — In General, (3d ed.) ("It has been said that the general grounds for a new trial are that the verdict is against the weight of the evidence, that the damages are excessive, or that for other reasons the trial was not fair, and that the motion also may raise questions of law arising out of substantial errors in the admission or rejection of evidence or the giving or refusal of instructions.")

Under Rule 59(c), an appropriate motion to alter or amend judgment must invoke one of three major grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; or (3) the need to correct clear error [of law] or prevent manifest injustice". *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); *see also, Gutierrez v. Ashcroft*, 289 F. Supp. 2d 555, 561 (D.N.J. 2003) (relief under Rule 52(b) and Rule 59(e) are "substantially similar").

Rule 60(b) also allows a party to seek relief from a final judgment under a limited set of circumstances, including fraud, mistake, and newly discovered evidence. The general purpose of

that Rule is "to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Educ. and Welfare*, 572 F.2d 976, 977 (3d Cir.1978). The decision to grant or deny Rule 60(b) relief lies in the "sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances." *Ross v. Meagan*, 638 F.2d 646, 648 (3d Cir. 1981).[1]

## III.   DISCUSSION[2]

### A.   Plaintiff's Motion Judgment as a Matter of Law or New Trial

Plaintiff's Motion for Judgment as a Matter of Law or for a New Trial, Doc. No. 164, asks the Court to overturn the jury's verdict as to his claims for violation of the Polygraph Protection Law, as well as to overturn the verdict in favor of the Defendants on their claims for breach of contract, breach of fiduciary duty, fraudulent misrepresentation, intentional interference with contractual relations, and misappropriation of trade secrets. For the following reasons, that Motion is denied.

### 1.   THE EPPA CLAIM

The Polygraph Protection Law states that "it shall be unlawful for any employer . . . (1) directly or indirectly, to require, request, suggest, or cause any employee or prospective employee to take or submit to any lie detector test; (2) to use, accept, refer to, or inquire concerning the results of any lie detector test of any employee or prospective employee" or to otherwise take an adverse employment action against an employee on the basis of the results of any lie detector test. 29 U.S.C. § 2002. A limited exception exists for where an employer seeks

---

[1] The foregoing rules relate to the motions that the parties have filed to challenge the verdict itself. Other motions seeking fees, costs or other financially-based consequences of the verdict as rendered are discussed separately below.

[2] The Court's review of the motions - - and the review of the evidence - - is primarily for the parties and their counsel. Hence, this Memorandum draws from prior pre-trial procedures and the trial record without setting out a full, chronological presentation of the facts before addressing the motions. For such a presentation, the Court refers to Doc. Nos. 80, 105, 122.

to use a polygraph "in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft, embezzlement, misappropriation, or an act of unlawful industrial espionage or sabotage." *Id.* § 2006(d)(1). To invoke the exception, the statute requires that "the employee had access to the property that is the subject of the investigation," the employer "has a reasonable suspicion that the employee was involved in the incident or activity under investigation," and the employer executes a signed statement, provided to the examinee before the test, that "sets forth with particularity the specific incident or activity being investigated and the basis for testing particular employees." *Id.* § 2006(d)(2)-(4). The statement must provide "an identification of the specific economic loss or injury to the business of the employer," state that the employee "had access to the property that is the subject of the investigation," and describe "the basis of the employer's reasonable suspicion that the employee was involved in the incident or activity under investigation." *Id.* § 2006(d)(4)(D)(i)-(iii).

The jury returned a verdict in favor of all Defendants on Mr. Accurso's polygraph law claim. Mr. Accurso seeks judgment as a matter of law or, in the alternative, a new trial and/or to alter or amend judgment on this claim, asserting that the jury's verdict was "inconsistent"[3] with the undisputed evidence and with the Court's instruction. Specifically, Mr. Accurso asserts the evidence was undisputed that Ms. Strein and Mr. Land discussed the results of the polygraph

---

[3] In his motion for judgment as a matter of law pursuant to Rule 50(a), Mr. Accurso repeatedly argues that the verdict on the EPPA claim was "inconsistent" with the evidence, *see* Doc. No. 164 at 10, 11, 12. This is not a correct statement of the standard courts apply to such a motion. The standard for granting judgment as a matter of law under Rule 50 is whether, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is *insufficient* evidence from which a jury reasonably could reach its verdict. *Eddy*, 369 F.3d at 230. "Consistency" is not the proper inquiry. Indeed, it is the fundamental function of the jury to resolve any inconsistencies and it is not open to the Court to revisit the record to look for, and resolve differently, any such "inconsistencies" or competing interpretations when asked to enter judgment as a matter of law. *See Mosley v. Wilson*, 102 F.3d 85, 90 (3d Cir. 1996) (stating that entering judgment as a matter of law solely on the basis of inconsistent verdicts would be inappropriate).

examination taken by Mr. Accurso in May of 2008, during which Mr. Land stated that Plaintiff "had been found deceptive" on four out of five questions, and that Mr. Land was "devastated" by the results. *See* N.T. Apr. 4, 2016 at 62-65. Mr. Accurso argues that Ms. Strein, who controlled RDG, *see id.* at 8-9, and had fired him, *see id.* at 74, thus had knowledge during the applicable limitations period[4] of Mr. Land's concerns about Mr. Accurso's alleged failure to pass the 2008 polygraph. *See id.* at 68. Mr. Accurso references evidence that, with respect to an alleged second polygraph examination in 2010, Ms. Strein physically opened the door for the polygraph examiner when he arrived at her home, directed him to where he was to set up his equipment, then admitted Mr. Accurso into her home and directed him where to go in her house for the polygraph, and later asked the polygraph examiner how the examination had gone. *See id.* at 70; N.T. Apr. 7, 2016 at 8. At trial there also was reference to Ms. Strein's deposition testimony that she had asked the polygrapher, "how did it go?" and had a conversation with Mr. Land thereafter but could not recall the content of that conversation. N.T. Apr. 4, 2016 at 72-74. To justify his motion Mr. Accurso also points to (1) letters written by Mr. Land in 2009 and 2010 in which Mr. Land addresses the 2008 polygraph to argue that Mr. Land relied upon the 2008 result

---

[4] The EPPA has a three year statute of limitation. See 29 U.S.C. § 2005(c)(2). The first polygraph at issue occurred in 2008. The original iteration of Mr. Accurso's complaint was filed more than three years after that first test was administered. The Court previously granted summary judgment to Defendants on the EPPA claim to the extent it was based on Defendants having insisted that Mr. Accurso take the 2008 polygraph. *See* Doc. No. 64 at 1 n.1. The Court later clarified that, while a claim based on the circumstances giving rise to the 2008 polygraph was time-barred, a claim based on *consequences* that then came to pass within the limitations period but arose from the 2008 polygraph were not necessarily time-barred. *See* Doc. No. 80 at 6 n.1. Following the close of evidence at trial, the Court instructed the jury that

> If you find any of the following based on the evidence, then Mr. Accurso has established a violation of this Act. Number One, at any time after December 14, 2009, any of the defendants directly or indirectly required, requested, suggested, or caused Mr. Accurso to take or submit to a polygraph test; or . . . any of the defendants used, accepted, referred to, or inquired concerning the results of a polygraph taken by Mr. Accurso . . ."

N.T. Apr. 8, 2006 at 72-73 (paragraph breaks omitted).

during the limitations period in making employment decisions, *see* N.T. Apr. 5, 2016 at 47-48; (2) in December of 2010, Mr. Land had threatened to terminate the relationship with Mr. Accurso if he did not take and pass a polygraph, *see id.* at 52; (3) Mr. Land was "convinced" that Mr. Accurso took the polygraph examination in December of 2010, even though he subsequently testified that he later formed the view that Mr. Accurso had not actually taken the second test; *id.* at 61; and (4) Mr. Land believed he had legal justification for having Mr. Accurso take a polygraph in December of 2010, but without needing to draw such justification from the EPPA, *id.* at 33.

Despite Mr. Accurso's selective rendition of evidence, viewing all the evidence in the light most favorable to the non-movants, the Court cannot say that there was insufficient evidence to support the jury's verdict on the Polygraph Protection Law claim or that the verdict was against the fair weight of the evidence. Mr. Accurso neglects to recall that Mr. Land testified that after Mr. Accurso took the polygraph in March of 2008, he drew the conclusion that Mr. Accurso had diverted business. N.T. Apr. 5, 2016 at 16. While he stated that he relied on the 2008 polygraph "for probably 48 hours," he also told the jury that thereafter the "test became irrelevant" because Mr. Accurso confessed to the conduct that precipitated the polygraph. *Id.* at 18-19. Given evidence of Mr. Accurso's confession, the jury had reason to find that there was no violation of the polygraph protection law stemming from a use of the 2008 polygraph test within the limitations period that prompted an adverse employment action against Mr. Accurso. Regarding the alleged 2010 polygraph, evidence was presented to the jury that (1) the Defendants believed that Mr. Accurso never in fact took a second polygraph, and (2) Mr. Land never concluded that Mr. Accurso failed the second polygraph. *Id.* at 57-58. Thus, the jury's

verdict that the alleged 2010 polygraph was not an EPPA violation was also based on sufficient evidence and cannot be overturned as being against the weight of the evidence.

Mr. Accurso also seeks judgment as a matter of law or, in the alternative, he seeks a new trial and/or an alteration to, or amendment of, the judgment on the Polygraph Protection Law count because, he says, the verdict was inconsistent with Court's instructions on that statute.

After instructing the jury on the elements of the EPPA count, the Court gave the following instruction concerning the permitted exception to EPPA liability contained in 29 U.S.C. § 2006(d):

> If you find that the defendants required, requested, suggested, or caused Mr. Accurso to take or submit to a polygraph test, you must nevertheless find that the defendants did not violate the Act if you determine all of the following conditions exist: Number One, the test was administered in connection with an ongoing investigation involving economic loss or injury to the defendants' business, such as theft, embezzlement, misappropriation, or an act of unlawful industrial espionage or sabotage; and, Mr. Accurso had access to the property that was the subject of the investigation; and, That the defendants had a reasonable suspicion that Mr. Accurso was involved in the incident or activity under investigation; and, The defendants drafted a written statement which was provided to Mr. Accurso before the test was administered that set out the specific incident or activity being investigated and the basis for testing Mr. Accurso, where the written statement contained an identification of the specific economic loss or injury sustained by the defendant, including a statement indicating that Mr. Accurso had access to the property that was the subject of the investigation and the written statements also described the basis of their reasonable suspicion that he was involved in the incident or activity under investigation. This statement also must be signed by a person authorized by the defendants to legally bind them.

N.T. Apr. 8, 2016 at 73-74 (paragraph breaks omitted). Mr. Accurso argues that the verdict was "inconsistent" with the foregoing instruction because "there was no justification for such an exemption or exception from liability where Defendants had indisputably used, accepted, referred to, or inquired concerning the results of a polygraph taken by Mr. Accurso after December 14, 2009." Doc. No. 164 at 12.

The Court rejects this argument. Mr. Accurso's position is, in the final analysis, only argument of his preferred *interpretation* of evidence. He does not describe evidence itself or challenge the language of the Court's instruction. Moreover, analytically, because there was sufficient evidence to support the defense theory that there was no use of a polygraph within the limitations period in taking an adverse employment action against Mr. Accurso, any "insufficiency" in the evidence on the limited exemption for ongoing investigations is immaterial.[5]

### 2. The Breach of Contract Claim

Mr. Accurso argues that the evidence was insufficient to support the jury's verdict on the breach of contract counterclaim and that he is entitled to a new trial on the claim. Doc. No. 164 at 12-17, 28-29. He asserts that (1) defense counsel improperly argued that the jury could draw a negative inference from Mr. Accurso's alleged spoliation of evidence, (2) there was no evidence to support counsel's argument that Mr. Accurso gave Mr. Rey Medina, a roofing contractor with whom Mr. Accurso was a personal friend, secret pricing information related to the "Hibbert" project, (3) the evidence was insufficient to prove that the Defendants suffered any damages, and (4) the Court erred in permitting Mr. Land to offer a lay opinion concerning the damages he and his co-defendants incurred from Mr. Accurso's alleged breach. The Court finds that the verdict on the breach of contract counterclaim was supported by sufficient evidence.

The argument by defense counsel to alleged spoliation was not improper.

> "The general principles concerning the inferences to be drawn from the loss or destruction of documents are well established. When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has

---

[5] To the extent that these same arguments are recited to suggest that the Court erred in failing to grant Mr. Accurso a directed verdict on the claim or that he is entitled to a new trial on the claim, *see* Doc. No. 164 at 25-28, they are rejected as well.

> prevented production did so out of the well-founded fear that the contents would harm him."

*Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) (citing *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983); *United States v. Cherkasky Meat Co.*, 259 F.2d 89 (3d Cir. 1958)). A negative inference properly may be drawn where the evidence in question is within the party's control and there has been an actual suppression or withholding of the evidence. *Id.* (stating that no unfavorable inference arises "when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.")

Defense counsel argued to the jury that,

> you can draw your own conclusions from circumstantial evidence. Note that both Mr. Accurso and Mr. Medina threw away and deleted all of their e-mails and documents in 2012 after Mr. Accurso had been terminated. You can draw the inference that having done that, the information would contain damaging -- evidence damaging to them and helpful to the defendants.

N.T. Apr. 8, 2016 at 48-49. At trial, Ms. Strein testified that Mr. Accurso deleted emails after he was fired. She explained that she reached this conclusion because she found responses to emails and complete email threads in Mr. Accurso's "sent" box, but no original email threads in his "inbox." N.T. Apr. 6, 2016 at 197-8. She testified that emails contained confidential business information, such as customer names and customer correspondence. *Id.* at 199. Accordingly, there was an evidentiary basis for counsel's argument that a negative inference could be drawn from evidence to the effect that the emails were deleted.

With respect to Mr. Accurso's second argument, there was sufficient evidence to support counsel's argument that Mr. Accurso gave Mr. Medina Defendants' secret pricing information related to the Hibbert project. Mr. Accurso testified RDG acted as a consultant on the project for the owner, and Mr. Medina was a bidder on the project. N.T. Apr. 6, 2016 at 73-74. Part of

RDG's work was to evaluate bids for the project. *Id.* at 75-6. He admitted on cross-examination that roofers are not supposed to know the exact amount that a customer wishes to spend on a roofing project. *Id.* at 75. After Mr. Accurso's employment was terminated, Mr. Land's letter accusing Mr. Accurso of divulging Defendants' work product for the Hibbert project was found in Mr. Medina's files. *Id.* at 79. After Mr. Land accused Mr. Accurso of tipping off Mr. Medina about a competitive bid for the Hibbert project, Mr. Accurso sent Mr. Medina his response to Mr. Land's accusation. *Id.* 83-4. He also admitted he continued to have Mr. Medina help him do drawings for projects after Mr. Land expressed his displeasure with him doing so, told Mr. Medina about new marketing material Defendants began using, and gave him user name and password information. *Id.* 88-91. Finally, Mr. Land testified that pricing information is "a blueprint to underbid what we do." N.T. Apr. 7, 2016 at 71. He testified that a competing company had his pricing analysis prior to the Hibbert job. *Id.* at 73.

Third, the record supports the conclusion that Defendants offered sufficient evidence of damages arising from the breach in the form of Mr. Land's lay opinion. *See* N.T. Apr. 7, 2016 at 82-83, Doc. No. 70-1, Def. Ex. 198. The Court ruled that this evidence was admissible under Federal Rule of Evidence 701, which allows lay opinion evidence that is (a) rationally based on the witness's perception, (b) helpful to clearly understanding of the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge. *Accurso v. Infra-Red Servs., Inc.*, 169 F. Supp. 3d 612, 621-22 (E.D. Pa. 2016). Mr. Land testified he based his damages conclusion on his 35 years' personal experience in the roofing industry and his review of the documentary evidence in the case. Def. Ex. 198 at 1. Mr. Accurso offers no cogent reason for the Court to reexamine the earlier ruling permitting Mr. Land to offer a F.R.E. 701 lay opinion concerning the damages Defendants incurred from Mr.

Accurso's alleged breach and information disclosures. The jury was free to – and in fact was instructed on this point - - weigh this opinion in light of Mr. Land's personal interest in the case, and apparently elected to credit the opinion sufficiently to make its award against Mr. Accurso on this issue.

### 3. The Breach of Fiduciary Duty and Fraudulent Misrepresentation Claims

Mr. Accurso argues that the evidence was insufficient to prove the breach of fiduciary duty and fraudulent misrepresentation claims against him and that, in any case, he is entitled to a new trial on those claims because the verdict was against the weight of the evidence.[6] "To establish a breach of fiduciary duty under Pennsylvania law, a plaintiff must prove not only a fiduciary duty, but also '(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bring[ing] about plaintiff's injuries.'" *Conquest v. WMC Mortg. Corp.*, 247 F. Supp. 3d 618, 633-34 (E.D. Pa. 2017) (quoting *Dinger v. Allfirst Fin., Inc.*, 82 F. App'x 261, 265 (3d Cir. 2003)). To establish a claim for fraudulent misrepresentation, a plaintiff must prove: (1) a representation or omission; (2) which is material to a transaction between the parties; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) proximate causation of injury. *Overall v. Univ. of Pa.*, 412 F.3d 492, 498 (3d Cir. 2005); *David Pflumm Paving & Excavating, Inc. v. Found. Servs. Co.*, 816 A.2d 1164, 1171 (Pa. Super. Ct. 2003).

---

[6] Other than citing the trial record where Mr. Accurso objected to jury instructions on the breach of fiduciary duty and fraudulent misrepresentation claims, Mr. Accurso offers only the conclusory assertions that the evidence was insufficient to reach the jury and the verdict was against the weight of the evidence. *See* Doc. No. 164 at 17-19, 29-30.

The Court finds the verdicts on the two counterclaims were supported by sufficient evidence and were not against the weight of the evidence at trial. In the first place, Mr. Accurso's contract contained a confidentiality clause. N.T. Apr. 4, 2016 at 103-4. Sufficient evidence on the fiduciary duty claim was then adduced, *inter alia*, when Mr. Accurso admitted that he sent Mr. Medina a roof survey that Mr. Land created for Franklin General Hospital without asking Mr. Land's permission. N.T. Apr. 6, 2016 at 67-8. Mr. Land testified that Mr. Accurso's help of Mr. Medina was "an usurpation of the opportunity for our company to bid this work. . . . If he's aware of jobs that are out there — certainly if I'm aware of jobs that are out there, I'm going to share them [with Mr. Accurso]. Together we'll develop them. This is not the case in this case." N.T. Apr. 7, 2016 at 70. Mr. Accurso also admitted to sending Mr. Medina RDG confidential information about a project in Vermont. N.T. Apr. 6, 2016 at 112. Concerning injury resulting from the breach of fiduciary duty to keep pricing information confidential, Mr. Land stated, "We have a certain methodology and we close deals. That has a value to it. I don't give that work away with — I'm here to make money, not run a charity, and it gives away valuable inside information. . . . It's a unique work product." *Id.* at 70-71.

Examples of evidence admitted at trial which was sufficient to establish the fraudulent misrepresentation/omission claim includes 1) Mr. Accurso's failure to tell Mr. Land that Mr. Medina was using the Land drawings, and 2) receiving customer and pricing information, and 3) Mr. Accurso's continuing his relationship with Mr. Medina after representing to Mr. Land even after the first polygraph. N.T. Apr. 6, 2016 at 41-49. The jury also learned that Mr. Accurso had omitted telling Mr. Land that he had instructed a customer to withhold payment to the company. *Id.* at 115-16. Thus, there was more than enough evidence to justify the jury's verdict.

### 4.     The Intentional Interference with Contractual Relations Claim

Mr. Accurso also argues that the evidence was insufficient to prove the counterclaim of intentional interference with contractual relations, that the verdict on that issue was against the weight of the evidence,[7] and that he is entitled to a new trial on the claim.

The requisite elements of this claim are "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997) (citing *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super Ct. 1987)).

The Court finds the verdict on this counterclaim was supported by sufficient evidence and was not against the weight of the evidence.  Mr. Accurso testified that Mr. Land had an ongoing relationship with a marketer named Bob Tyrka.  N.T. Apr. 5, 2016 at 129.  Mr. Land offered testimony and exhibits to support the claim that Mr. Accurso interfered with that Land-Tyrka relationship by giving Mr. Tyrka an email discussing an internal company message regarding Ms. Strein's compensation to do work Mr. Tyrka previously performed.  N.T. Apr. 4, 2016 at 171, N.T. Apr. 5, 2016 at 78-79, 123, N.T. Apr. 6, 2016 at 124-28.  Mr. Land also testified that Mr. Accurso interfered with the contractual relationship with a customer named Revera Health Systems in Vermont with whom he had an ongoing relationship valued at $75,000 per year in billings.  N.T. Apr. 4, 2016 at 172-73, N.T. Apr. 5, 2016 at 78, N.T. Apr. 7, 2016 at

---

[7] As with the breach of fiduciary duty and fraudulent misrepresentation claims already discussed, Mr. Accurso offers only the conclusory assertions that the evidence on intentional interference was insufficient to present the claim to the jury and that the jury's verdict was against the weight of the evidence.  *See* Doc. No. 164 at 19-20, 30-31.

101.  Mr. Accurso admitted he solicited Revera for his new company after he was terminated from RDG.  N.T. Apr. 6, 2016 at 138.  Finally, evidence was also presented to the jury that Mr. Accurso told a customer named Cippolini to delay a payment to RDG.  N.T. Apr. 5, 2016 at 130-31.

### 5.      The Misappropriation of Trade Secrets Claim

Mr. Accurso next argues the evidence was insufficient to prove the claim under the Pennsylvania Uniform Trade Secrets Act (PUTSA), 12 Pa.C.S. § 5301 et seq, or to find that his misappropriation of his former employer's trade secrets was willful and malicious.  He also argues he is entitled to a new trial on this claim because, once again, he says the verdict was against the weight of the evidence.

The elements of a misappropriation of trade secrets claim in Pennsylvania are:  "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff."  *Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003).  "One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if . . . his disclosure or use constitutes a breach of confidence."  *Id.* at 566 n. 3 (citing Restatement (First) of Torts § 757 (1939)).

A trade secret is:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa.C.S. § 5302; *see also Rohm and Haas Co. v. Lin*, 992 A.2d 132, 143 n. 4 (Pa. Super. Ct. 2010) ("A trade secret may consist of any formula, pattern, device or compilation of information

which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.") (internal citation omitted). If the violation is willful and malicious, the misappropriator is liable for exemplary damages and an award of attorneys' fees. 12 Pa.C.S. §§ 5304, 5305.

The Court finds the verdict on the counterclaim and the jury's finding that the violation was willful and malicious was supported by sufficient evidence and was not against the weight of the evidence. As recounted above with regard to the breach of contract claim, evidence was offered that (1) Mr. Accurso gave Mr. Medina Defendants' secret pricing information related to the Hibbert project for which RDG acted as a consultant on the project for the owner and Mr. Medina was a bidder on the project, N.T. Apr. 6, 2016 at 73-74; (2) Mr. Accurso admitted on cross-examination that bidders are not supposed to know the exact amount that a customer wishes to spend on a project, *id.* at 75; (3) he told Mr. Medina about new marketing material Defendants began using and gave him private user name and password information, to Defendant's disadvantage, *id.* 88-91; (4) pricing information is Defendants' "blueprint," N.T. Apr. 7, 2016 at 71; and (5) because of him, a competing company had Defendants' pricing analysis prior to the Hibbert job. *Id.* at 73.

The Court also refuses Mr. Accurso's argument that the evidence was insufficient to support the jury's damages determination on this issue. In addition to the lay opinion offered by Mr. Land, relevant to all of the counterclaims, Defendants presented evidence that the service associated with the secret password information disclosed by Mr. Accurso was valued at approximately $40,000 per year. N.T. Apr. 6, 2016 at 207-08. The aggregation of this evidence is sufficient to support the award of $63,000 in actual damages on the PUTSA claim, and the amount awarded is not against the weight of the evidence.

17

**B.      Defendants' Motion for Judgment as a Matter of Law on the WPCL Claim**

Defendants' Motion for Judgment as a Matter of Law (Doc. Nos. 165, 166, 171, 172) asserts the jury's verdict on Mr. Accurso claims for violation of the Wage Payment and Collection Law must be overturned.  For the following reasons, the Motion is denied.

After Mr. Accurso rested his case in chief, Defendants moved for a directed verdict on Mr. Accurso's claim for wages under the Wage Payment and Collection Law.  *See* Doc. No. 136. The Court allowed the claim to proceed. The jury returned a verdict in favor of Mr. Accurso in the amount of $51,400.  Defendants argue the Court should grant judgment as a matter of law in their favor because Mr. Accurso had not "earned" any unpaid commissions by the time of the termination of his employment and because he failed to present sufficient evidence of damages. *See* Doc. No. 172.

In terms of the applicable law on this point, the parties substantially agree:  the case law is clear that only *earned* wages that were due and owing are recoverable under the statute, and an employment contract controls as to whether certain commission are "earned."  *See, e.g., Sendi v. NCR Comten, Inc.*, 619 F. Supp. 1577, 1579 (E.D. Pa. 1985).   According to his contract, Mr. Accurso was to "receive fifty percent (50%) of all commissions or income due to Company for any sale generated and initiated by Contractor within Contractor's Territory.  . . .  All moneys due contractor shall be paid within seven (7) days [sic] receipt . . ."  *See* Defs.' Answer, Doc. No. 7, Ex. A.

Defendants assert "the evidence at trial established [the] parties' agreement that commissions vested and were to be paid to Mr. Accurso seven days after receipt of payment [from] the customer. . . .  No sooner.  At trial the evidence established that Plaintiff was paid all amounts received prior to his termination and that he did no work in 2012. . . .  Thus, any

commissions 'generated' by the Company after his termination were not *earned* as the Courts have interpreted that word in the context of the WCPL" Doc. No. 172 at 4 (emphasis in original; citations to trial testimony omitted).

The Court rejects this argument. The evidence presented to the jury included testimony from Mr. Accurso that there were seven projects generating sales completed in 2011 before termination of his employment for which he was not compensated. Those projects were Mansion, Solvay Solexis, Toppan Printing, Quest, and Revera. N.T. Apr. 8, 2016, Doc. No. 161, at 7-9. "The mere fact that certain compensation is not payable until a future date is not necessarily fatal to a WPCL claim so long as the employee is deemed to have 'earned' it during his employment." *Riseman v. Advanta Corp.*, 39 F. App'x. 761, 765 (3d Cir. 2002). In other words, the date compensation is payable is not necessarily the same as the date compensation is earned. Naturally, an employer and employee can designate some other point in the transaction at which time a commission is "earned," but this particular contract contains no such clear designation. Accordingly, because a reasonable jury could find from the evidence that Mr. Accurso earned commissions when these sales were generated, having been initiated by Mr. Accurso in his territory and confirmed prior to termination of his employment, the liability verdict on the WPCL claim will not be disturbed.

Defendants also claim that Mr. Accurso failed to present any evidence of his damages on this claim, so, according to the Defendants, even if the jury could have found them liable for violating the statute, the jury had no basis for awarding any damages. However, quite simply, Defendants fail to credit the fact that Mr. Accurso did present evidence of Defendants' receipts, *see* N.T. April 6, 2016, Doc. No. 159, at 166-75, and those receipts, coupled with his testimony, gave the jury a basis for awarding damages for this violation.

**C.** **Defendants' Amended Post-trial Motions Pursuant to Rules 54, 59, and 60**

Defendants filed a separate motion seeking an award of exemplary damages and attorneys' fees on the trade secrets claim under Pennsylvania Uniform Trade Secrets Act ("PUTSA"), an award of prejudgment interest and costs, and a molding of the judgment to offset any amounts due to Mr. Accurso in order to grant Defendants a "net" judgment, the result of which would be to relieve them from having to pay monies to Mr. Accurso and risk that he would not pay the monies the jury determined that he should pay to Defendants.  *See* Doc. No. 171.  For the following reasons, the Motion is granted in part and denied in part.

**1.** **Exemplary Damages and Attorney Fees under PUTSA**

The Pennsylvania trade secrets law permits, but does not mandate, the award of exemplary damages and attorney fees where the misappropriation is willful and malicious.[8]  12 Pa.C.S. §§ 5304, 5305.  The Court "*may* award exemplary damages in an amount not exceeding twice any award" made for actual damages.  12 Pa.C.S. § 5304(b) (emphasis added).  The jury awarded Defendants $63,000 for actual damages arising from Mr. Accurso's misappropriation.  Doc. No. 135 at 13.  As part of its verdict, the jury answered "Yes" to an interrogatory asking "Have Defendants proven <u>by clear and convincing</u> evidence that Plaintiff's conduct misappropriating a trade secret was willful and malicious?"  *Id.* (emphasis in original).

Although there appears to be no Pennsylvania authority on the issue, the Court finds the Pennsylvania legislature's use of the word "may" in the statute invokes the Court's discretion as to whether exemplary damages and attorney fees are appropriately awarded, but sets a limit of two-times-actual damages if the Court does exercise its discretion to make an exemplary

---

[8] This statute defines willful and malicious as "[s]uch intentional acts or gross neglect of duty as to evince a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the person at fault is conscious of the consequences of his carelessness." 12 Pa.C.S. § 5302.

damages award. Other jurisdictions that have enacted similar provisions of the Uniform Trade Secrets Act have acknowledged that the award is discretionary. *See Fluxus LLC v. Textile Junkie*, No. CV1000236RGKAGRX, 2011 WL 13213588, at *2 (C.D. Cal. Mar. 15, 2011) (holding that under California's version of UTSA, Cal. Civ. Code § 3426.4, "an award of attorney's fees is within the district court's discretion."); *Boeing Co. v. Sierracin Corp.*, 738 P.2d 665, 680 (Wash. 1987) (holding that a trial court's decision to award exemplary damages and fees under Washington's version of UTSA is discretionary, and the reviewing court would not reverse the amount unless the trial court clearly abused its discretion); *Real-Time Labs., Inc. v. Predator Sys., Inc.*, 757 So. 2d 634, 638 (Fla. Dist. Ct. App. 2000) (Florida's version "gives the trial court discretion to award attorney's fees even if the actions of the misappropriating parties is found to be willful and malicious").

Based on the totality of the record throughout the pendency of this case, and including the presentation of trial, the Court declines to award exemplary damages and attorney fees. The experience of adjudicating the many pretrial issues raised by the parties and presiding over the trial of this action before a jury for six days persuades the Court that neither side in the case acted toward the other appropriately during their various interactions with each other. Mr. Land's and Mr. Accurso's relationship was marked by mistrust and, in any number of examples, unfair dealings as demonstrated by the jury's determination that both sides breached duties owed to each other. The history of the sides' treatment of each other was riddled with deliberate antagonisms, efforts to obfuscate and incivilities. While the jury concluded Defendants failed to pay him his wages and heard uncontroverted evidence about Defendants' treatment of Mr. Accurso, the jurors also concluded Mr. Accurso breached contractual and fiduciary duties, interfered with Defendants' contractual relations, misappropriated their trade secrets, and

awarded them compensatory damages as a result.  The Court finds that the jury's award of damages to both sides is eminently fair and should not be disturbed, adjusted or expanded.

### 2.        Prejudgment Interest

The award of prejudgment interest on contract damages in these circumstances is also discretionary and not, as Defendants argue, a matter of right.  *See Cresci Const. Servs., Inc. v. Martin*, 64 A.3d 254 (Pa. Super. Ct. 2013).  Reviewing state and federal case law, the *Cresci* court held that prejudgment interest on a contract claim may be recovered in Pennsylvania "'only if (1) a defendant commits a breach of a contract to pay a definite sum of money; or (2) a defendant commits a breach of contract to render a performance the value of which in money is stated in the contract; or (3) a defendant commits a breach of contract to render a performance the value of which is ascertainable by mathematical calculation from a standard fixed in the contract; or (4) a defendant commits a breach of a contract to render a performance the value of which in money is ascertainable from established market prices of the subject matter.'"  *Id.* at 259 (quoting *Black Gold Coal Corp. v. Shawville Coal Co.*, 730 F.2d 941, 943-44 (3d Cir. 1984)).  In all other circumstances prejudgment interest is awarded as a matter of discretion.  *Id.* at 944 (citing Restatement (Second) of Contracts § 354 cmt. d (1981)).

Accordingly, the question of whether prejudgment interest is awarded in this case as a matter of right turns on whether a contract itself contains a fixed standard by which to calculate damages.  The contract at issue here does not contain such a standard to determine the damages arising from breach of the confidentiality and non-compete provisions.  *See* Doc. No. 43-1 at ¶¶

15, 20.  Any award of prejudgment interest on the claim is thus discretionary, and for the reasons already stated with regard to exemplary damages, the Court declines to make such an award.[9]

### 3.  Attorneys' Fees and Costs under Rules 68 and 54(d)(2)

Defendants also seek an award of fees and costs incurred after January 15, 2015.  On that day, they made an offer of judgment pursuant to Fed. R. Civ. P. 68 in the amount of $35,000, inclusive of all claims.  *See* Doc. Nos. 166-1, 171-1.

If an offer of judgment pursuant to Rule 68 is not accepted, and "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."  Fed. R. Civ. P. 68.  Federal Rule 68 is inapplicable, however, in a case in which the defendant obtains judgment.  *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981). Where a defendant prevails after making an offer of judgment, "the trial judge retains his Rule 54(d) discretion."  *Id.* at 354.

Mr. Accurso rejected Defendants' offer and the jury returned a verdict in his favor of $51,400 on the his wage and collection law claim only, while awarding Defendants $13,000 in damages on their breach of contract claim, $37,606 on the breach of fiduciary duty claim, $1 on their fraudulent misrepresentation claim, $1 on their intentional interference with contractual relations claim, and $63,000 on their misappropriation of trade secrets claim.  Arithmetically the resulting "net" verdict to Defendants totals $62,208.  Thus, mathematically, it can be said that Defendants "prevailed" after making their offer of judgment, making Rule 68 inapplicable, and the award, if any, of attorneys' fees and costs then is governed by Rule 54(d).

---

[9] In considerable measure, the Court's decision on this point considers the propriety of an interest award being determined at least in part on "the time value of money".  So, for example, if the case (and, hence, the ultimate achievement of an award of a money-based verdict) languished as a result of any given event(s) and/or the action(s) of the eventual payor, then that circumstance could well justify an award of interest.  Suffice it to say, in this litigation, the passage of time was the responsibility of both sides, to say the least.

Rule 54(d)(2) creates a procedure, but not a right, to recover attorneys' fees. *See* Fed. R. Civ. P. 54(d)(2) Advisory Committee note (noting that Rule 54(d)(2) "establishes a procedure for presenting claims for attorneys' fees"); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224 (3d Cir. 1995) ("Rule 54(d)(2) recognizes the possibility of awards of 'attorney's fees and related non-taxable expenses' and establishes a procedure for asserting a right to such an award. This rule does not provide a rule of decision, however. Rather, it and the accompanying advisory committee comment recognize that there must be another source of authority for such an award.") Having already determined that Defendants should not receive attorney's fees by virtue of the verdict on the misappropriation claim, and there being no other source of authority for such an award under the Federal Rules or governing case law, the Court declines to award fees to Defendants pursuant to Rule 54(d)(2).[10]

### 4. "Molding" the Verdict

Finally, Defendants move pursuant to Fed. R. Civ. P. 59 to "mold the verdict" to offset the money judgment obtained by Mr. Accurso against the amount of the money judgment for which the jury found him to be liable to Defendants. The Court's surmise as to why Defendants make such an application is expressed above. The motion itself cites no case law supporting Defendants' request, and the Court has found none that supports the requested relief. Accordingly, this aspect of the motion is denied, and the parties are directed to communicate with each other and, if necessary, resort to formal collection activities.

---

[10] The award of costs under Rule 54(d)(1) "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Defendants are directed to apply to the Clerk of Court for a taxation of costs as may be permitted.

## IV.    CONCLUSION

For the above reasons, the Court denies the post-trial motions filed by Peter Accurso and denies the post-trial motions filed by Defendants.  An appropriate order follows.[11]

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[11] In the accompanying Order, the Court also denies as moot Mr. Accurso's Motion to stay enforcement of the judgment pending decision on the post-trial motions, as well as duplicative Motions still pending on the Court's docket for this case.