IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER ACCURSO,<br>*Plaintiff & Counterclaim Defendant* | : | CIVIL ACTION |
| v. | : | |
| DEFENDANTS SERVICES, INC. *et al.*,<br>*Defendants & Counterclaim Plaintiffs* | : | No. 13-7509 |

## MEMORANDUM

PRATTER, J.                                                                                                       SEPTEMBER 7, 2021

A jury concluded that Brian Land, Audrey Strein, and their three companies Infra-Red Services, Inc., Roofing Dynamics Group, LLC, and Roofing Dynamics, Inc. (collectively "Defendants") violated the Pennsylvania Wage Collection and Payment Law. After the Court denied the parties' post-trial motions, both parties appealed. The Third Circuit Court of Appeals affirmed in part the Court's order and reversed in part only on the issue of attorneys' fees and costs. On remand, after the Estate of Peter Accurso ("Plaintiff") failed to comply with several of the Court's orders, and Defendants moved to dismiss for failure to prosecute, the Court dismissed the remaining case for failure to prosecute. Plaintiff now moves for relief from the Court's order dismissing his case. Defendants oppose the motion.

The Court will grant Plaintiff's motion for relief.

### BACKGROUND

Because the Court writes for the benefit of the parties, this Memorandum assumes their basic familiarity with the facts of their case, albeit the events occurred some time ago. This case was tried to a jury in April 2016 and a verdict was reached, which in part found that Defendants violated the Pennsylvania Wage Payment and Collection Law (WPCL). Plaintiff filed a motion

for attorneys' fees, costs, liquidated damages, and prejudgment interest. The Court later denied the parties' post-trial motions. Doc. Nos. 180, 181. Timely appeals followed.

The Third Circuit Court of Appeals affirmed in part and reversed in part the Court's February 15, 2018 Order. The appellate court reversed the portion of the Court's order that denied Plaintiff's request for attorneys' fees. On remand, this Court ordered Plaintiff to submit a petition for attorneys' fees and costs with respect to his WPCL claim, in accordance with the appellate court's opinion, on or before May 22, 2020. Doc. No. 187. Several days after that deadline had passed, Plaintiff had not yet submitted a fee petition. The Court then gave Plaintiff until June 12, 2020 to comply with the Court's prior order. Doc. No. 188. Defendants filed a motion to dismiss for failure to prosecute, which was later amended. Doc. No. 190. After the Court still had not received any response from Plaintiff, the Court then gave Plaintiff until July 21, 2020 to comply with its prior orders, noting that the failure to do so could result in the Court dismissing the case for failure to prosecute. Doc. No. 192. Plaintiff still did not comply with the Court's order. As a result, the Court granted Defendants' amended motion and dismissed the attorneys' fee claim for failure to prosecute. Doc. No. 193.

Plaintiff now moves under Rule 60(b) for relief from the Court's July 24, 2020 Order dismissing this case for failure to prosecute.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 60(b)(1), a party may move for relief from a final judgment or order if there was "mistake, inadvertence, surprise, or excusable neglect." Such a motion must be made within a reasonable time and, if made for the reasons provided for in Rule 60(b)(1)-(3), no more than one year after the entry of the judgment or order. Fed. R. Civ. P. 60(c)(1). When analyzing a claim for excusable neglect, "factors to be considered are 'the danger

2

of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Stitzel v. Guarini*, No. 03-cv-4760, 2006 WL 1805972, at *5 (E.D. Pa. June 27, 2006) (alteration in original) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). The Third Circuit Court of Appeals has held that the Supreme Court's four-factor analysis of excusable neglect in *Pioneer*, which involved a bankruptcy rule, also applies to Rule 60(b). *George Harms Const. Co. v. Chao*, 371 F.3d 156, 163 (3d Cir. 2004). Additionally, "[a] district court must consider each of the four *Pioneer* factors and the totality of the circumstances." *Kohl's Dep't Stores, Inc. v. Levco-Route 46 Assocs., L.P.*, 121 F. App'x 971, 974 (3d Cir. 2005).

## DISCUSSION

### I. Motion for Relief from Judgment

Plaintiff asks this Court for relief from its July 24, 2020 Order which dismissed this case for failure to prosecute. Plaintiff contends that the failure to comply with the Court's previous orders was due to inadvertence and mistake. Plaintiff argues that Eric Marttila, Esq., the initial counsel in this matter, failed to update his email address on the Court's electronic filing system (after his firm merged with High Swartz) and then, while the case was on appeal, Mr. Marttila resigned from High Swartz.[1] When Mr. Marttila left the firm, James Shrimp, Esq. of High Swartz entered his appearance on behalf of Plaintiff before the Third Circuit Court of Appeals and argued the case on appeal. However, Plaintiff contends that neither Mr. Shrimp nor any other High Swartz

---

[1] Perhaps emblematic of the issues discussed in Mr. Accurso's motion, Mr. Marttila is still actively listed as one of Plaintiff's attorneys on the Court's electronic filing system, including with his prior email address.

attorney entered an appearance on Plaintiff's behalf on this Court's docket due to excusable neglect.

Plaintiff also asserts that the timing of the appellate court's March 30, 2020 decision, which was issued just as workplace restrictions were announced by the Commonwealth due to the COVID-19 pandemic, also contributed to Plaintiff's counsel's inadvertence and mistake. Plaintiff argues that, because no current High Swartz attorney had entered an appearance before this Court, and because Mr. Marttila never registered a High Swartz email address, Plaintiff and counsel never received or had notice of the Court's previous orders. Plaintiff contends that it did not learn of any of the Court's orders until attempting to file a supplemental petition for attorneys' fee and costs. Plaintiff's counsel represents that "High Swartz would not have knowingly or intentionally ignored multiple orders of this Court requiring the submission of briefing and other factual materials."[2] Doc. No. 195-2 at 3-4.

Defendants argue that Plaintiff's alleged inadvertence and mistake are "irrelevant" because Mr. Shrimp appeared before the Third Circuit Court of Appeals, presented oral argument, and received notice of the appellate court's March 30, 2020 decision. Doc. No. 197-1 at 2. Defendants assert that any attempt to blame the COVID-19 pandemic "ring[s] hollow in light of Mr. Shrimp's active practice of law" during that time. Defendants attached to their opposition copies of dockets for cases in which Mr. Shrimp had entered an appearance and filed documents. Defendants maintain that none of the *Pioneer* factors weigh in Plaintiff's favor.

---

[2] High Swartz contends that its failure to enter an appearance on this Court's docket while the case was on appeal was due to inadvertent, excusable neglect. Doc. No. 195 at 5. High Swartz also maintains that it took reasonable measures to avoid such a situation by automatically forwarding any emails intended for Mr. Marttila (at his High Swartz email address) to a partner at the firm to review and monitor after he left but that Mr. Marttila never updated his email address on the Court's electronic filing system to reflect his new High Swartz email address after the firm merger. *Id.*

4

### A. *Pioneer* Factors

#### 1. Danger of Prejudice to the Non-Moving Party

Plaintiff argues that there is no danger of prejudice to Defendants because Plaintiff had previously filed a motion for attorneys' fees and costs after trial, and that this fee request, which was based on Plaintiff's successful WPCL claim, was one of the primary issues on appeal. Thus, Plaintiff argues that there is no surprise or prejudice to Defendants. Doc. No. 195-2 at 5.

In response, Defendants contends that Plaintiff "caught everyone by surprise by randomly filing [this] motion out of nowhere" and that the interest of finality weighs in Defendants' favor. Doc. No. 197-1 at 4. Defendants argue that, as small businesses, they have been impacted by the pandemic and had braced themselves for another large expense after the appellate court's decision in this case. As a result, they argue that the Court's order dismissing this case allowed Defendants to make some "beneficial business and financial decisions." Doc. No. 197-1 at 5.

The Court certainly appreciates Defendants' "real world" arguments as to prejudice. And, as a threshold matter, the Court is not necessarily impressed at all by Plaintiff's explanation for why counsel failed to follow the Court's repeated orders concerning the filing of a fee petition. That said, and in spite of all that, the Third Circuit Court of Appeals remanded this case for the Court to address Plaintiff's request for attorneys' fees and costs on the WPCL claim. Here, there does not seem to be any lasting prejudice that would befall Defendants by vacating the prior order and allowing Plaintiff one last chance to outline a proper claim for attorneys' fees and costs. Certainly such an outcome is not in Defendants' favor, but "the loss of an advantageous ruling [is] not sufficiently prejudicial to deny relief under [Rule] 60(b)." *Stitzel*, 2006 WL 1805972, at *6. Furthermore, Defendants will still have an opportunity to respond to the petition for attorneys' fees

and costs. Thus, the Court finds that this factor, and the lack of fundamental prejudice to Defendants, weighs in favor of Plaintiff.

### 2.     Length of Delay and Impact on Judicial Proceedings

Plaintiff did not file this motion for relief until four months after the Court dismissed the case for failure to prosecute. Plaintiff represents that upon discovering the Court's earlier orders and subsequent dismissal, Plaintiff filed a Rule 60(b) motion the next day. Doc. No. 195-2 at 5. And Plaintiff argues that despite this delay, there has been little to no impact on these proceedings because the case has already been tried before a jury on the merits and the remaining liability issues were addressed on appeal. Thus, Plaintiff contends that the only unresolved issue is the attorneys' fees and costs on its WPCL claim.

Defendants argue that four months after the Court closed this case is much too long to seek relief and weighs against reopening this case. Doc. No. 197 at 6.

In another case's holding that a three-week "delay was trivial in light of the one-year outer limit for bringing a Rule 60(b) motion," the Third Circuit Court of Appeals also observed that it had previously concluded that a "two-month delay was insignificant as a matter of law." *In re Cendant Corp. PRIDES Litig.*, 235 F.3d 176, 183 (3d Cir. 2000) (citing *In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 130 (3d Cir. 1999)). The appellate court later highlighted, when commenting on *Cendant* and *O'Brien*, that "the parties moving for relief from judgment [in those cases] were not aware of the grounds for relief from judgment until shortly before they brought their 60(b) motions." *Kohl's*, 121 F. App'x at 975 (affirming denial of Rule 60(b) motion based on four-month delay where Kohl's waited too long to file its motion despite opposing party "repeatedly remind[ing] Kohl's that May's consent remained outstanding").

6

There is no bright-line rule as to when a period of time becomes an unreasonable delay. That said, a motion under Rule 60(b)(1)-(3) must be made no later than one year after the entry of judgment or order. Here, Plaintiff did not move for relief under Rule 60(b)(1) until four months after the Court dismissed his case. While Plaintiff's explanation and excuse may indeed be rather lame, the Court does not find that in an absolute sense the four-month delay here was unreasonable in light of Plaintiff's and counsel's representation that immediately after discovering that they had failed (albeit all of their own doing and through no fault of their opponent, the Court, or anyone else) to comply with the Court's previous orders and that the Court had dismissed the case, they filed their motion for relief under Rule 60(b)(1).

### 3. Reason for the Delay

Plaintiff argues that due to inadvertence or excusable neglect, there was no High Swartz attorney entered as counsel on its behalf on this Court's docket. As stated above, Mr. Marttila left High Swartz while this case was on appeal. High Swartz claims that it took reasonable steps to avoid such a situation from occurring by automatically forwarding all emails intended for Mr. Marttila to a firm partner to review and monitor. However, whatever system the firm had obviously failed to work as intended because Mr. Marttila's registered email address in this case was for his former firm, not his High Swartz email address, and he had never updated it prior to leaving the firm. Thus, given its faulty "system", High Swartz contends that they did not receive any notice of the Court's orders.

Defendants respond that "[t]he reason for the delay in this case is not because of some email snafu," but rather, they correctly argue, that the delay was the result of counsel's failure "to think about this case for eight months after the Third Circuit ruled in his client's favor and directed that he and his firm could file for attorneys' fees." Doc. No. 197-1 at 6.

That Mr. Shrimp failed to check this Court's docket at any time after securing a partial appellate victory for his client is certainly embarrassing to him and to his firm. However, the Court acknowledges that when the appellate court issued its decision, the effects of the global pandemic were just beginning to be felt—including office closings and work from home routines that were just getting underway. But litigation still continued. Here, it appears that a perfect storm occurred in which Mr. Marttila never updated his email address, left the firm, and no other attorney ever entered an appearance on this Court's docket. Such a practice is ill-advised and obviously warrants future precautions, if only as a rudimentary loss prevention matter. That said, the Court finds that the neglect here on the part of Plaintiff, its counsel, and counsel's firm amounts to the kind of neglect under these circumstances that can actually happen to many well-meaning professionals. Of course, such a series of unfortunate events could be avoided entirely in the future so long as attorneys actively monitor the dockets of their cases. Such is the nature of excusable neglect. Though it will be of only cool comfort to defense counsel here, the paraphrased admonitions "He who lives by the sword shall die by the sword," *Matthew* 26:52, and "There but for the grace of God go I," John Bradford, OXFORD ENGLISH DICTIONARY (4th ed. 1992), are applicable. This factor also weighs in favor of letting Plaintiff have another opportunity.

### 4. Good Faith

Plaintiff and his counsel maintain that this motion was filed in good faith as soon as it discovered that no current attorney of High Swartz was entered on the docket, that several Court-ordered deadlines were missed, and that the case was closed. Plaintiff maintains that it did not learn that the case had been dismissed until counsel was about to file a supplemental fee petition. Plaintiff's counsel admit that they made inadvertent errors and mistakes, but they contend that they would not knowingly or intentionally ignore this Court's orders. Doc. No. 195-2 at 8.

8

Defendants point to Plaintiff's counsel's active litigation in a number of other cases as support for their contention that counsel has acted in bad faith here by not entering his appearance in this case on this Court's docket. They contend that it was "reckless" for Plaintiff's counsel to fail to enter his appearance after receiving an appellate ruling in his client's favor.

When the Court dismissed this case, it did so upon a finding that the Plaintiff's "failure to comply was willful, is the sole responsibility of Plaintiff, and has prejudiced the opposing parties in moving this case forward," and because the delay had been repeated, no alternative sanctions other than dismissal were appropriate at the time. Doc. No. 193. Having now again analyzed Plaintiff's motion for relief, it appears the Court's orders went unnoticed because no attorney of record had an active email address registered on the Court's electronic filing system. And, apparently due in part to the pandemic (which is, of course, fast becoming the favorite explanation for many missteps) and the neglect of both Mr. Shrimp and his firm, no one reviewed this Court's docket. Although the Court takes it quite seriously when its orders are ignored and finds Plaintiff's excuse rather unsatisfactory, the Court nonetheless concludes that Plaintiff has not acted in bad faith.

## CONCLUSION

This case is an example of what happens when technology, coupled with casual assumptions, are relied upon to a fault and goes to show the importance of actively checking the dockets of the cases one manages. The computer simply is no substitute for professionalism. Here, however, the Court will conclude that Plaintiff's failure to comply with the Court's earlier orders should again be excused under the *Pioneer* factors which weigh in favor of granting Plaintiff's

motion. Accordingly, the Court will vacate its previous order, reopen this case, and instruct Plaintiff to file its fee petition. An appropriate order follows.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE